THE FIDELITY & CASUALTY COMPANY OF NEW YORK, *Appellant*, v. D. N. MORRISON CONSTRUCTION COMPANY, INC., OF VIRGINIA, *Appellee*.

Division B.

Opinion filed February 13, 1930.

310

*Sam J. Barco,* of Miami, for Appellant;

*Hudson & Cason,* of Miami, for Appellee.

STRUM, J.—This is a suit in equity to enforce a statutory lien against real property for materials furnished and labor performed by the complainant in the erection of a building upon said lands.

The appellee, D. N. Morrison Construction Company, was complainant below. Defendants below were the former owner of the lands who contracted with complainant for the erection of the building; the present owner who took with notice of complainant's rights; certain creditors holding mortgage and other liens against the land; and the appellant The Fidelity & Casualty Company of New York who is alleged to be the surety on a release bond executed by the present owner, which will be referred to hereafter.

The bill of complaint, as amended, alleges in substance that the complainant, pursuant to a contract with the then owner, furnished material and performed labor in the erection of a building on said land and completed the work according to said contract, for which there was due to the complainant, and unpaid, a stated sum of money. The bill further alleges that prior to the commencement of this.

suit the present owner of said land, as principal, and the Fidelity & Casualty Company of New York, as surety, executed and filed in the clerk's office a bond in double the sum due complainant, conditioned in the language of the statute to "pay any judgment which may be recovered on said lien with costs," which bond was given for the purpose of releasing the land in question from complainant's lien. See Sec. 3532, Rev. Gen. Stats. 1920; Sec. 5396, Comp. Gen. Laws 1927.

By amendment, the bill further alleges in substance that said bond was filed without the knowledge of complainant, and that complainant had no opportunity to inquire into or question the validity or proper execution thereof; that the surety has denied liability under said bond, and has so notified the complainant in writing, the ground upon which liability is denied being that the execution of said bond was not authorized by said surety.

The bill prays for a decree against the owner for the amount due complainant and for a foreclosure of complainant's lien and a sale of the property in the event said decree against the owner be not paid, or in the alternative that if the court shall determine that complainant's recourse for the indebtedness aforesaid must be against the principal and surety who executed said bond, that complainant in such event might have judgment for the amount of such lien against the owner and against the Fidelity & Casualty Company, surety on said bond. The bill also prays that in the event it be determined that an action at law is necessary to determine the question of the surety's liability, the owner be enjoined from selling or encumbering the property and that the creditors above mentioned, whose claims are alleged to be subordinate to that of complainant, be enjoined from attempting to foreclose against the land.

The surety, The Fidelity & Casualty Company, demurred generally to the bill as amended and urges in support thereof that it is an improper party to said bill, and that the bill is without equity as to said demurrant, because the complainant has a full, adequate and complete remedy at law against it upon said bond; and that it is entitled to a jury trial to determine the question of its liability on said bond.

The demurrer was overruled, and from that order this appeal was taken.

The determinative question presented on this appeal, therefore, is whether or not when an owner has executed and filed a bond pursuant to Sec. 5396, Comp. Gen. Laws 1927, for the purpose of releasing his property from a mechanic's or laborer's lien accruing under the statutes, the lienor may join the surety upon such bond in a suit in equity against the owner to enforce the lien and secure a decree *in personam* against the owner and also against the surety on said bond in the equity cause. The complainant has followed the procedure just stated and contends that such procedure is permissible, while the surety, the appellant here, contends that where such a bond is given and the lienor elects to proceed in equity to enforce his lien, the lienor must first procure a decree *in personam* against the owner in the equity cause after which the lienor must pursue its remedy at law against the surety on the bond.

The lienor contends that such a remedy at law would not be full, adequate and complete because in the situation here presented the lienor stands between two warring factions, namely, the owner on the one hand, who claims that the land has been released from the lien by the giving of the bond, and the surety on the other hand, who claims that the bond is invalid. The complainant lienor points out

that if the bond is in fact invalid, the land is still subject to the lien and the lienor entitled to a foreclosure of such lien and a sale of the land, but that if it is necessary to first proceed in equity to a decree *in personam* against the owner, and thereafter in a separate suit at law to recover against the surety, and in the latter action it should be determined that the bond is invalid, during the interim the land may have passed into the hands of innocent purchasers or creditors, in which event the lienor would have lost the benefit of the land as security for his lien through no fault of his own.

There is a striking conflict in the existing authority upon the question of whether a recovery may be had against the surety in the equity suit. In Phillips v. Gilbert, 101 U. S. 721, 25 L. Ed. 833, the Supreme Court of the United States takes the following view of the question: "The effect of the undertaking filed in the suit was to release the property from the lien and to oblige the complainant (the lienor) to have recourse for security of payment to the parties who entered into said undertaking. It would facilitate the ends of justice if a decree could be made at once against the undertakers (the sureties) as is done against stipulators in admiralty proceedings. But we find no precedent for such a course upon a bond or undertaking given by way of indemnity in proceedings at common law or in chancery, unless it be expressly so stipulated in the instrument, or unless the parties enter into a recognizance, which is a matter of record." In that case the decree of the lower court, a court of equity, in which was included a decree against the surety was reversed and the cause remanded with instructions to enter a personal decree against the owner and to decree that the lien claimed by the lienor was a valid lien at the commencement of the suit, but that by reason of the bond

filed in the cause the lands became released and discharged from the lien, and that the lienor have leave to proceed at once upon the bond in an action at law to be brought for that purpose. The bond in that case was given during suit, while here the bond was given before the suit was commenced. But that circumstance does not distinguish the two cases for the purpose of settling the particular question here under consideration. In fact there would apparently be better justification for holding that a decree might be rendered in the equity suit against the surety where the bond had been executed in and during the progress of that suit.

The Supreme Judicial Court of Massachusetts also follows the rule adopted by the Supreme Court of the United States. See LaCentra v. Jackson, 139 N. E. R. 429.

The text writers have also very largely followed the rule laid down in Phillips v. Gilbert, *supra,* citing that case and the Massachusetts case in support of their position. In Thompson on Real Property, Vol. 6, page 246, the rule is thus stated: ''The effect of an undertaking filed in a lien suit in pursuance of a statute to pay any judgment that may be rendered upon the lien claim, is to release the property from the lien and to oblige the complainant to have recourse to the parties who entered into the undertaking; but a decree can not be entered against them in the equity suit to enforce the lien unless it be expressly so stipulated in the instrument or unless the parties have entered into a recognizance * * *. When a lien has been discharged by the filing of a bond, the lienor's right of recourse against the surety depends upon his obtaining a judgment in an action wherein he establishes a right to foreclosure, enforceable by a sale of the premises but for the filing of the bond.'' See also 18 R. C. L., page 964; Jones on Mechanics' Liens (3rd Ed.), page 1511.

Phillips on Mechanics' Liens, page 529. In 40 C. J., page 332, the same rule is stated, although upon authority of the New York cases hereinafter mentioned, it is also stated that the courts commend as better practice the joining of the surety in the equity suit.

Although the intermediate appellate courts of New York formerly differed upon the question, the highest court of that State some years ago laid down the rule that the surety might be joined in the equity suit, the equities of all parties settled, and a decree rendered against the surety in that suit. See Morton v. Tucker, 40 N. E. R. 3. Since that decision, the courts of New York have consistently adhered to that view. See Harley v. Plant, 104 N. E. R. 906; Schillinger v. Arnot, 46 N. E. R. 957; Riggles v. Mathiesen, 41 N. Y. Supp. 962, affirmed 53 N. E. R. 1131.

In Morton v. Tucker, *supra,* it is said:

"A bond given by the owner of buildings upon which a notice of lien for materials has been filed, conditioned for the payment of any judgment that may be rendered against the property by Laws 1885, C. 342, Sec. 24, subd. 6, takes the place of the property, and discharges and becomes the subject of the lien; and an action is maintainable thereon against all parties interested, including the sureties, without first foreclosing the lien upon the property. 31 N. Y. Supp. 446, reversed."

The Supreme Court of Michigan also shares the New York view. See Des Laurers v. Rhodes, 217 N. W. R. 922; Lumber Co. v. Ortman, 157 N. W. R. 96, wherein it is held that the remedies at law and in equity are concurrent, and that the lienor may elect to proceed against the owner and the sureties on his bond in one equitable action, or may first proceed to a decree *in personam* in equity

against the owner, after which an action at law may be brought against the surety.

Although the rule prevailing in New York and Michigan commends itself for simplicity, directness and facility, there are cogent reasons of principle and practice that impel us to adopt the rule prevailing in the Supreme Court of the United States and in the State of Massachusetts.

First, the question of liability on a bond of this nature is purely a matter of common law cognizance, and a court of equity can not acquire jurisdiction to enforce its penalty unless the bond is accompanied by some extraneous circumstance which would inject into the matter a ground of equitable cognizance, to which a recovery upon the bond would be incidental. Bein v. Heath, 12 How. (U. S.) 168, 13 L. Ed. 939, 9 C. J. 83. As an illustration, in the Supreme Court of the United States where, as with us, the practice of the High Court of Chancery of England prevails as to matters not otherwise regulated by statute or rule, it has been held in Bein v. Heath, *supra,* that a court proceeding according to the rules of equity can not give a judgment against the obligors upon an injunction bond when it dissolves an injunction. That court merely orders the dissolution of the injunction, leaving the obligee to proceed at law against the sureties, if he has sustained damages by reason of a breach of the condition of the bond. The court took the view that such a bond was merely a contract of indemnity, without equitable incidents, and cognizable only at law. The mere fact that the bond now under consideration is given for the purpose of discharging a statutory lien, which lien being unknown to the common law may be enforced in equity. (See Hawthorne v. Panama Park Co., 44 Fla. 194; 32 So. R. 812; Mills v. Britt, 56 Fla. 839; 47 So. R. 799), does not alter the essential nature of the bond as a contract of

indemnity enforceable in an action at law, there being no other circumstances which would bring the enforcement of liability on the bond within the field of equitable cognizance. The doctrine of Bein v. Heath, *supra,* has since been criticized, but not overruled. It has also been extensively followed. See the annotations in Rose's Notes; also Russell v. Farley, 105 U. S. 433; 26 L. Ed. 1060; Myers v. Block, 120 U. S. 206, 30 L. Ed. 642; 32 C. J. 439; U. S. Fidelity and Gty. Co. v. Burke, 238 Fed. R. 881; Ann. Cas. 1918 C 93, and note. It is unnecessary for us to here either adopt or reject the doctrine. We merely refer to it by way of illustration.

Second, the courts of New York and Michigan take the view that the bond when given "takes the place of the property and becomes the subject of the lien." From this view of the nature, character and purpose of the bond, those courts conclude that its enforcement is an appropriate subject of equity jurisdiction, in which court the original lien itself might have been enforced. With deference to that view, which is supported by forceful reasoning, we are nevertheless of the opinion that the bond does not "take the place of the property nor become the subject of the lien" in the sense that a court of chancery acquires jurisdiction to render judgment upon the bond in lieu of foreclosing the lien on the land. Our view is that the effect of the filing of a valid bond is to release the land from the lien, substituting for the land a contract of indemnity. If the lienor elects to proceed in equity, he is left to a decree *in personam* against the lienee, for the payment of which decree the lienor is indemnified by the bond in addition to the right to enforce the decree against the property of the lienee. The bond, therefore, is not substituted for the land in the sense that equity may proceed against the bond as it could against the land, nor

is it in the nature of a recognizance or forthcoming bond for the land, but the bond becomes a contract of indemnity enforceable at common law, and in the absence of other equitable incidents, is beyond the field of equitable cognizance.

Third, our lien law is quite similar to that of New York and Michigan, and is identical in the respect under consideration. But the practice in this State preserves with a greater degree of strictness than obtains in either New York or Michigan the demarkation between courts of equity and of law and the respective fields of operation of such courts. See Di Menna v. Cooper, etc., 115 N. E. R. 993, illustrating the New York practice. As illustrating our practice, see Trustee v. Gleason, 39 Fla. 771, 23 So. R. 539; Hughes v. Hanna, 39 Fla. 365, 22 So. R. 612; Wiggins v. Williams, 36 Fla. 637; 18 So. R. 859.

Fourth, the New York and Michigan rule is justified largely on the ground that all parties can be brought into one suit and all equities settled in the proceeding, eliminating the necessity for suits both in equity and at law and consequent hazards to lienors resulting from incongruous results in the two tribunals to the prejudice of an innocent lienor. In all cases, however, in which the courts of New York and Michigan have considered the question, there was presented for consideration only the question of whether it was appropriate to consider in the equitable suit the rights of the respective parties in respect to settling the equities between them, such matters for instance as whether or not the lien claimant was entitled to a lien, the amount and priorities of the claims of lienors amongst themselves and as between other creditors and purchasers, set-offs, whether the lien claimants had performed their contracts, the settlement of accounts between the parties, and other like matters. In none of those cases does the

court seem to have been squarely confronted with the question here presented, which is, can a suit in equity be maintained against a surety who denies the execution of the bond and upon which question the surety insists upon a trial by jury. In Schillinger v. Arnot, 46 N. E. R. 957, the New York court considered the question of whether its procedure in allowing the joinder of a surety in the equity suit violated the constitutional guaranty of a jury trial under the Constitution of that State, but that question was there considered in an aspect essentially differing from that now before us. In that case the complainant was a sub-contractor. The principal contractor first deposited money as provided by the New York statute to release the land from the complainant's lien, and later was permitted to withdraw the money provided the contractor substituted its personal liability to secure the lienor. The question was not whether the contractor was bound by his assumption of personal liability for payment of the indebtedness to the lienor or whether he could demand a jury trial upon such an issue, but whether the lienor had substantially performed his contract, a question which admittedly may be settled in an equitable suit to foreclose the lien. Here the surety disclaims all liability under the bond, claiming that the bond is invalid because not executed by the surety, a question of common law cognizance before the adoption of our first Constitution and upon which our Constitution preserves the common law right to trial by jury. We can not hold that the surety, by executing the bond, has waived its right to a jury trial, for the reason, amongst others, that if there was no execution of the bond there was no waiver. The surety denies the execution of the bond and insists upon a jury trial upon that question. As already explained, the essential nature of the bond as a contract of indemnity is not altered

so as to bring the enforcement of the penalty thereof within equitable cognizance by reason of the mere fact that the effect of the bond is to release from the lien the land against which a court of equity might have otherwise rendered a decree of foreclosure. A court of equity may of course cancel and expunge from the record such a bond when its execution or approval is procured by fraud. See Keys v. Brackett, 72 N. E. R. 986, 3 Ann Cas. 81.

The bond here in question differs essentially in nature and purpose from a forthcoming bond in attachment or replevin (see Evans v. Kloeppel, 72 Fla. 267, 73 So. R. 180; Farris v. Holley, 95 Fla. 360, 116 So. R. 763), and from a forthcoming bond on execution (see Archibald v. Donald, 124 So. R. 175), upon which, by the terms of valid applicable statutes, judgment may be entered against sureties in the principal suit without bringing another suit on the bond. Bonds of the character just mentioned are not strictly indemnity bonds but are in the nature of recognizance or forthcoming bonds representing the property itself. They are executed in a pending cause and subject to statutes prescribing the consequence of a breach. By executing such bonds the sureties voluntarily submit themselves to the jurisdiction of the court in the cause in which the bonds are executed and filed in accordance with existing statutes providing, amongst other things, that upon a breach of the bond judgment shall be forthwith entered in the pending cause against the sureties. The sureties waive any further notice or opportunity to be heard and are bound by the acts of their principal.

When a bond of the character here under consideration is filed by a lienee pursuant to Sec. 5396, Comp. Gen. Laws 1927, the land is thereby released from the lien, but the lienor may nevertheless maintain a suit in equity in which a decree *in personam* may be rendered against the owner

or lienee. North Bay Shore Land Co. v. Perry, 86 Fla. 322, 98 So. R. 139; Phillips v. Gilbert, 101 U. S. 721, 25 L. Ed. 833, 18 R. C. L. 991. When it is said that the bond releases the land from the lien, it is of course presupposed that the bond is a valid and binding obligation.

The proper practice in such a case in this State is for the lienor to file a bill the allegations of which disclose that the complainant is entitled to a lien against the land to enforce which lien the lienor would be entitled to a decree of foreclosure but for the interposition of the release bond. A court of equity may then enter a decree *in personam* against the owner and in the same decree may determine that complainant would be entitled to a lien and to a foreclosure thereof against the land but for the giving of such bond, a decree *in personam* only against the owner being rendered because of the interposition of such bond releasing the land. In appropriate cases, such as the one at bar, where it is shown that the surety denies execution of the bond, or otherwise denies its validity, or in cases where such a contention by the surety may be reasonably anticipated, the chancellor by express recitation in the same decree, besides entering a decree *in personam* against the owner, may retain jurisdiction of the equity cause for the purpose of subjecting the property itself to the lien, and for further appropriate proceedings in that behalf, in the event the bond should be held invalid, or the surety upon said bond should thereafter be discharged from liability thereunder, by judgment of a court of competent jurisdiction. Of course this proposition would not apply where the surety though liable upon the bond is unable to respond to an execution nor perhaps when the surety contests merely the amount of damages recoverable. In the same decree, and where appropriate to the circumstances, the chancellor may restrain the conveyance or encumbrance

of the property by the owner until the validity of the bond, when questioned, is determined by a court of competent jurisdiction and may make such other orders appropriate to the circumstances as may be necessary to protect and preserve complainant's lien pending a determination of the validity of the bond by which the owner seeks to have the property released. By such procedure the rights of the lienor are fully protected. If by reason of any infirmity or imperfection in the bond a competent judgment should be rendered discharging the surety from liability, thus in effect establishing the invalidity of the bond on account of the giving of which the lienor has been prevented from subjecting the property itself, supplemental proceedings may then be had in the equity cause to the end that decree may then be rendered with reference to the property itself appropriate to the situation as it exists after a competent determination of the validity of the bond. We do not overlook the fact that the purpose of the statute providing for the giving of such a bond is to release the property so that the owner may convey or encumber the same free of the lien. Rockwell v. Kelly, 77 N. E. R. 490. The owner-lienee can not justly complain that a decree of the character mentioned would defeat the object of the statute by burdensomely prolonging the period within which the property is involved in the uncertainties of litigation, thereby interfering with its alienation. The bond is given at the election of the owner-lienee. If the surety selected by him sees fit to contest the validity of the bond, the owner-lienee must suffer the consequences.

No rights of innocent purchasers or creditors are here involved. The suit is against the owner and certain creditors with notice of complainant's lien. In cases where the rights of innocent third parties are involved, those rights may be determined in accordance with rules of law appli-

cable to persons in that status applied co-ordinately with the rule of practice herein adopted. It would be well, however, if those relying upon a bond of this nature in dealing with the land, and as to whom the bond may become a muniment of title, would exercise diligence in ascertaining whether the bond is valid, otherwise they may be compelled to suffer the consequence of their neglect. See Breed v. Gardner, 72 N. E. R. 983.

There is no equity in the bill as to the defendant, The Fidelity & Casualty Company, surety on said bond, for the reason that the bond is purely a contract of indemnity, recovery upon which is a matter of common law cognizance, and as to which the remedy at law is full, adequate and complete, though probably not as convenient to the complainant as to join the surety in the equity suit. As to the other defendants, the equity of the bill is not questioned by this appeal. Complainant's original right to a lien and to its foreclosure may be determined in this suit, as well as the amount due the complainant, for which a decree *in personam* may be rendered; and the equities and priories as between the complainant and the remaining defendants may be settled. If a decree is rendered for the complainant, appropriate reservation of jurisdiction may be made in the decree as already explained, and recourse may then be had by complainant to a court of common law to enforce the indemnity of the bond.

The decree overruling the surety's demurrer is reversed and the cause remanded for such further proceedings and decrees as may be appropriate and consistent with this opinion.

Reversed.

WHITFIELD, P. J., AND BUFORD, J., concur.

TERRELL, C. J., AND ELLIS, J., concur in the opinion and judgment.

BROWN, J., dissents.

BROWN, J. (dissenting):

The opinion of Mr. Justice STRUM is very strong and persuasive, but I am inclined to think that the bond, when properly executed, takes the place of the land, and that a court of equity can go right ahead, and adjudicate the sufficiency and validity of the bond, and if it be found valid, can decree a recovery against the obligors and sureties for the full amount found by the chancellor to be due and recoverable "on said lien." The statute (Sec. 5396, Comp. Gen. Laws) says that the lienee may release his property from the lien claimed by filing with the clerk a bond payable to the person claiming the lien "conditioned for the payment of any judgment which may be recovered on said lien." The statutory system regarding this class of liens, of which this section forms a part, provides that the lien may be enforced in equity. When a party with his sureties come in and release the land from the lien by filing such a bond with the clerk of the court, they in effect waive their right to object to the enforcement of the lien against the obligors in any of the methods provided by the statutory system, of which an equity proceeding is one.

In this case, the surety on the bond denies the validity of the bond, and in effect says that the lien on the land has not been displaced, yet challenges the right of the court to determine whether it has jurisdiction of the land, because, it alleges, the court has no right to even inquire into the question whether such a bond has been executed as the statute provides for. This anomalous situation

shows that the Legislature could not have contemplated that a provision made for the convenience of the lienee, by which he could put a bond in the place of the property, should be used to deprive the court of jurisdiction and thus embarrass or delay the proceedings for the enforcement of the lien. The law shows the lienee an abundance of consideration when it allows him to put up a bond in the place of the land, and neither he nor his sureties should be allowed to use it as a means of delay.

Necessarily, the court of equity where its jurisdiction has been properly invoked, must have the power to determine whether a valid bond has been executed, in order to determine whether the lien, which it has jurisdiction to enforce, exists against the property.

Can the surety deny the existence of the bond contemplated by the statute, thus saying the lien still exists on the property, and at the same time deny the power of the court to determine the question and proceed to enforce the lien against the property?

As was said in Morton v. Tucker (N. Y.), 40 N. E. R. 3:

"The sureties in the bond intended, and must be understood as undertaking, to pay the amount which it should be adjudged was due and owing to the plaintiffs, and which was chargeable against the property by virtue of their notice of lien. In other words, the condition was for the payment of any judgment which might have been rendered against the property had not the bond been given. The bond, as we have seen, is given to discharge the lien. It is one of the proceedings provided for by the statute, and it was evidently intended that the bond should take the place of the property, and become the subject of the lien, in the same form and manner as is provided for in

the case of the payment of money into court, or the deposit of securities under an order of the court after action brought. Ward v. Kilpatrick, 85 N. Y. 413-418.''