SUNDBERG, Justice.
We decide in this appeal the constitutionality of section 713.76, Florida Statutes (1977). In granting appellee’s motion to dismiss, the County Court of Dade County declared section 713.76 unconstitutional, thereby vesting this Court with jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution.
Appellee Miller operates an auto repair business in the city of Miami. Mrs. Martha Gravins delivered her automobile to appel-lee for body work. As a result of a dispute concerning the correct cost of the vehicle’s repair, appellee invoked the provisions of section 713.58, Florida Statutes (1977),[1] which grants a possessory lien in favor of persons providing labor and services on personal property. Mrs. Gravins sought the release of appellee’s lien on her car by posting bond under section 713.76.[2] Appellee maintained that the bond was insufficient to cover the value of his services[3] and refused to surrender possession of the car, prompting his arrest under section 713.-76(3). In its order granting appellee’s motion to dismiss, the county court held that section 713.76 deprived appellee of his property without due process of law.
“The determination of what due process requires in a given context depends on a consideration of both the nature of the governmental function involved and the private interests affected.” Mitchell v. W. T. Grant Co., 416 U.S. 600, 624, 94 S.Ct. 1895, 1908, 40 L.Ed.2d 406 (1974) (Powell, J., concurring); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Cafeteria Workers v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). We are confronted here with the constitutional implications of a rather curious, reverse form of provisional creditor remedy. More spe- *679 eifically, we must decide whether under Sniadach v. Family Finance Corp. of Bay View, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and its progeny, adequate procedural safeguards exist in section 713.76 to protect the property rights granted a lienholder in section 713.58.
Since 1969, the United States Supreme Court has grappled with the question of the minimum constitutional protections to be afforded hapless debtors deprived of their property by provisional creditor remedies.[4] In Sniadach, the Supreme Court invalidated a Wisconsin prejudgment garnishment statute that authorized ex parte seizure of the wages of the defaulting debtor. The creditor initiated the proceeding on the basis of an ex parte allegation of indebtedness on a promissory note. A summons of garnishment was issued by the court clerk without prior notice to the debtor and without a prior hearing. Stressing the hardship occasioned by wage garnishment and the attendant leverage in the creditor, the Court held that this “interim freezing of wages” without prior notice and opportunity to be heard violated due process. In his concurrence Justice Harlan noted that the “ ‘property’ of which petitioner has been deprived is the use of the garnished portion of her wages during the interim period between the garnishment and the culmination of the main suit.” Id. at 342, 89 S.Ct. at 1823 (emphasis in original).
Debtor rights were further expanded in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), which struck down the Florida and Pennsylvania replevin statutes. The Florida act provided that, without notice to the debtor or opportunity for a preseizure hearing, any creditor who filed an ex parte allegation that his “goods or chattels are wrongfully detained by any other person or officer,”[5] together with a bond in an amount double the sworn value of the property, could have a writ of replev-in directing the sheriff to seize the property. The Court held that due process required notice and an opportunity to be heard prior to the deprivation. The purpose of the hearing was “to protect his [the debtor’s] use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property . . . . Id. at 81, 92 S.Ct. at 1994.
The case of Mitchell v. W. T. Grant Co. signaled an apparent retrenchment from the potentially expansive reach of the Fuentes decision. There the Louisiana sequestration law was held constitutional because of the Court’s belief that it struck a proper balance between the competing interests of debtor and creditor. The statute had at least four procedural safeguards, two of the most important of which were judicial supervision of the writ issuance process and entitlement to an immediate post-seizure hearing. Fuentes was resuscitated, however, in North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), where Georgia’s prejudgment garnishment statute was called into question. Because the law required neither judicial participation, specific factual allegations of entitlement, nor a prompt post-seizure hearing, the Court invalidated the statute. As in previous cases, the lack of safeguards against mistaken or unlawful deprivations of property proved fatal to the act.[6]
*680 Heeding the mandate of the above decisions, this Court recently held three Florida statutes unconstitutional on procedural due process grounds. In Unique Caterers, Inc. v. Rudy’s Farm Co., 338 So.2d 1067 (Fla.1976), the prejudgment attachment provisions of chapter 76, Florida Statutes (1975), were invalidated. Sections of Florida’s distress for rent statute[7] suffered a similar fate in Phillips v. Guin & Hunt, Inc., 344 So.2d 568 (Fla.1977), followed shortly thereafter by the demise of our garnishment statute[8] in Ray Lein Construction, Inc. v. Wainwright, 346 So.2d 1029 (Fla.1977). All lacked the procedural machinery necessary to prevent the mistaken or fraudulent taking of a debtor’s property.
Hence, the Sniadach line of cases stands for the proposition that certain procedural safeguards must precede any significant deprivation of a person’s property interests. As noted throughout the opinion, the safeguards seek to limit the possibility of mistaken or wrongful deprivation during the interim between the initial taking and the culmination of the main suit. Prior to Sniadach, the danger of such deprivation was high, for the creditor, through his ex parte allegations, controlled three vital factual issues: (1) whether any debt was in fact owed; (2) the amount of the debt; and (3) the amount of debtor collateral sufficient to satisfy the debt. The debtor had no meaningful input into these areas until after state-enforced seizure of his property, which left him in an untenable bargaining position and often caused economic hardship.
We conclude, however, that section 713.76 is constitutional because it does not effect a\significant deprivation of a property interest. In contrast to one’s rights in his wages (Sniadach) or personalty (Fuentes), the property rights afforded under section 713.58 are extremely limited. The lien entitles the lienholder to possession of a customer’s property for three months, after which time it may be sold and the proceeds applied to cover the debt.[9] Possession of the property is a valuable interest only insofar as it ensures the existence of a secure fund from which the final bill can be satisfied. It is a form of leverage looking solely toward full payment.
Under section 713.76, the lienholder occupies at least as favorable a position as under section 713.58. He concededly loses possession of the property, but in its stead a liquid fund reposes in the court in an amount sufficient to cover the final bill. Nor must the former lienholder wait three months to recover the debt; he may institute proceedings for recovery against the bond at any time.[10]
*681 Moreover, the concerns prompting constitutional scrutiny in garnishment and attachment cases are not present here. Under section 713.76, the lienholder has immediate and meaningful input into the release of lien process. It is the lienholder who, by writing a final bill, decides in the first instance whether there is a debt owing. Most importantly, it is the lienholder who determines the amount in dispute, since the customer must post a bond in the amount of the final bill before regaining possession of the car. The lienholder is thus accorded the luxury of setting for himself the precise value of his lien and, concomitantly, the amount-of collateral necessary to secure his debt.
We believe that section 713.76 strikes a constitutional balance between the interests of a person in the use and possession of his property and the interests of a laborer in the existence of secure collateral commensurate with the value of his services. Accordingly, we reverse the order of dismissal and remand this cause to the County Court of Dade County for proceedings not inconsistent with • the views expressed in this opinion.
It is so ordered.
ENGLAND, C. J., and ADKINS, OYER-TON, HATCHETT and ALDERMAN, JJ., concur.
BOYD, J., dissents with an opinion.

. 713.58 Liens for labor or services on personal property.—
(1) In favor of persons performing labor or services for any other person, upon the personal property of the latter upon which the labor or services is performed, or which is used in the business, occupation, or employment in which the labor or services is performed.
(2) It is unlawful for any person, knowingly, willfully, and with intent to defraud, to remove any property upon which a lien has accrued under this section without first making full payment to the person performing labor or services of all sums due and payable for such labor or services or without first having the written consent of such person so performing the labor or services so to remove such property-
(3) In that the possessory right and lien of the person performing labor or services under this section is released, relinquished, and lost by the removal of such property upon which a lien has accrued, it shall be deemed prima facie evidence of intent to defraud if, upon the removal of such property, the person removing such property utters, delivers, or gives any check, draft, or written order for the payment of money in payment of the indebtedness secured by the lien and then stops payment on such check, draft, or written order.
(4) Any person violating the provisions of this section shall be deemed guilty of a misdemeanor and upon conviction shall be punished by fine of not more than $500 or imprisonment in the county jail for not more than 3 months.

. 713.76 Release of lien by filing bond.—
(1) Any lienee may release his property from any lien claimed thereon under this part by filing with the clerk of the circuit court a cash or surety bond, payable to the person claiming the lien, in the amount of the final bill, and conditioned for the payment of any judgment which may be recovered on said lien, with costs.
(2) Whenever a lienee brings an action in the appropriate court with respect to any property which has been wrongfully detained by a lienor in violation of this section, the lienee, upon a judgment in the lienee’s favor, shall be entitled to damages, reasonable court costs, and attorney’s fees sustained by the lienee by reason of such wrongful detention.
(3) Any lienor who, upon the posting of the bond, fails to release or return the property to the lienee pursuant to this section is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.-084.

. It is unclear whether the bond posted by Mrs. Gravins was “in the amount of the final bill” or some lesser amount. Due to the sparseness of the record before us and our disposition of the case today, we will defer to the county court on remand to determine' whether there was full compliance with the statute.

. We begin our analysis in 1969 because prior to that time the due process protections available to a debtor were restricted; in fact, the Supreme Court viewed procedural due process as requiring “where only property rights are concerned, that there [be] at some stage an opportunity for a hearing and judicial determination.” Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 599, 70 S.Ct. 870, 873, 94 L.Ed. 1088 (1950); Scott, Constitutional Regulation of Provisional Creditor Remedies: The Cost of Procedural Due Process, 61 Virginia L.Rev. 807 (1975).

. § 78.01, Fla.Stat. (1971).

. In Carey v. Sugar, 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976), the Court had for review a federal district court decision declaring New York’s attachment statute unconstitutional. The Court remanded the case to the district court to abstain from a decision until the parties had an opportunity to obtain a construction of the law from the New York courts.

. §§ 83.11, 83.12, 83.14-.19, Fla.Stat. (1975).

. §§ 77.031, 77.04, 77.06, 77.07, Fla.Stat. (1975).

. § 85.031(2), Fla.Stat. (1977):
BY SALE WITHOUT JUDICIAL PROCEEDINGS. — When any person entrusts to any mechanic or laborer, materials with which to construct, alter or repair any article of value, or any article of value to be altered or repaired, and if the article is completed and not taken away, and the reasonable charges not paid, such mechanic or laborer may sell it after 3 months from the time such charges become due at public auction for cash but before the sale the mechanic or laborer shall give public notice of the time and place thereof, by notices posted for 10 days in 3 public places in the county, one of which shall be at fhe courthouse, and another in some conspicuous part of his shop or place of business. The proceeds of the sale, after payment of charges for construction or repair with the costs of the sale, shall be deposited with the clerk of the circuit court for the county, if the owner is absent, where they shall remain subject to the order of the person legally entitled thereto. The clerk shall be entitled to receive 5 percent on the proceeds for the care and disbursement thereof. Any person claiming a lien under s. 713.65, of part II of chapter 713, may enforce it by sale without judicial proceedings in the manner set forth herein after 1 month after the time the charges for which a lien is claimed become due.

.§ 85.011(5), Fla.Stat. (1977):
SUMMARY ACTION.—
(a) By a person claiming a lien for labor performed, or claiming a landlord’s lien under s. 713.691, filing in the court having jurisdiction of the amount of the lien claimed, a complaint describing the property on which a lien is claimed and stating the facts which authorize or create the lien. Such person is entitled to the summary procedure under s. 51.011.
(b) If the issues are found for plaintiff, judgment shall be entered for the amount found to *681 be due him with 15 percent attorney’s fee and costs. The judgment is a prior lien on the property described in the petition over all other liens accruing or that may be filed subsequent to the day the lien for such labor performed or unpaid rent accrued, but if such issues are found for defendant, judgment shall be entered dismissing the action.