873 So.2d 359 (2004)
ARCHIVE AMERICA, INC., a Florida Corporation, Appellant/Cross-Appellee,
v.
VARIETY CHILDREN'S HOSPITAL d/b/a Miami Children's Hospital, a Florida not for profit corporation, Appellee/Cross-Appellant.
Nos. 3D03-2531, 3D03-2574.
District Court of Appeal of Florida, Third District.
March 24, 2004.
*360 Ruden, McClosky, Smith, Schuster & Russell and John H. Pelzer (Fort Lauderdale), for Archive America, Inc.
Broad & Cassel and Karen L. Stetson, Miami, for Variety Children's Hospital d/b/a Miami Children's Hospital.
Before SCHWARTZ, C.J., and GREEN, J., and BARKDULL, THOMAS H., JR., Senior Judge.
SCHWARTZ, Chief Judge.
Archive America, Inc. owns a large warehouse which stored literally tons of patients' medical records kept by Miami Children's Hospital. After a dispute arose between the two, the hospital sought to move the records to a competitor of Archive, and Archive, in turn, sued the hospital to recover damages for breach of contract and for the warehousing charges involved. In these proceedings, both sides challenge a non-final order in which the trial judge dealt with the facts that, on one hand, Archive held a possessory warehouseman's lien on the records under section 677.209, Florida Statutes (2003),[1] and, *361 on the other, that the hospital needed access to them in the course of its business of treating patients. The order now in question resolved the competing interests involved, pending final determination of the case by (a) ordering Archive to release the records under court supervision, but only (b) on the condition that the hospital post a bond or cash equivalent in an amount deemed appropriate to provide a fair substitute for the possessory lien.
Treating the primary issues before us, we find no merit either in Miami Children's Hospital's claim of error in the bond requirement in general or in Archive's contention that the amount was inadequate. Hence, to the extent that the order below is reviewable on non-final appeal under Florida Rule of Appellate Procedure 9.130(a)(3)(B)(orders relating to injunctions), see Parker Tampa Two, Inc. v. Somerset Dev. Corp., 544 So.2d 1018 (Fla. 1989), or Rule 9.130(a)(3)(C)(ii)(orders determining the right to immediate possession of property), we affirm. Alternatively considering the papers as applications for certiorari, see Eagle Brothers 2000, Inc. v. G.R. Sunrise, Inc., 863 So.2d 1283 (Fla. 4th DCA 2004); McClain Constr. Corp. v. Roberts, 351 So.2d 399 (Fla. 2d DCA 1977); Paul Gallizzi Gen. Contractor, Inc. v. Deeb Contractors, Inc., 502 So.2d 28 (Fla. 2d DCA 1987), we deny review.

I.
First, although neither the warehouseman's provisions of the Florida law, sections 677.201-677.210, Florida Statutes (2003)(7-201 to 7-210 of the UCC), nor any other statute specifically so provides, we find that the lower court acted well within its inherent equitable powers to condition the release of the property from the effect of the warehouseman's lien upon the posting of a bond to satisfy a final judgment for the warehousing charges. This processin which, in effect, the court transferred the lien to bond so as to equitably protect Archive's rights while, again in effect, mandatorily enjoining the transfer of the property subject to the lienhas long been recognized and employed in Florida. As the court stated in Merryman v. Southern Tours, Inc., 120 Fla. 440, 162 So. 897, 899 (1935):
The absence of a special statute requiring injunction bonds in all cases affords no occasion per se for a departure from the requirement in cases like this where by injunction the complainant seeks to destroy, for the period of the injunction's duration, valuable rights being claimed by the defendant contrary to the *362 alleged equity of complainant's adverse pleading.
Accord LTD Commodities Inc. v. Perederij, 699 F.2d 404 (7th Cir.1983); Foreman v. Behr, 866 So.2d 705 (Fla. 2d DCA 2003)(attorney's possessory retaining lien); Andrew Hall & Assocs. v. Ghanem, 679 So.2d 60 (Fla. 4th DCA 1996) (same); Wintter v. Fabber, 618 So.2d 375 (Fla. 4th DCA 1993); Maplewood Phase One Homeowner's Ass'n v. Cecil, 585 So.2d 370, 371 (Fla. 4th DCA 1991) ("While no statute or rule of court appears to authorize the replacement of a homeowner association's maintenance lien with a bond, we can think of no good reason why the chancellor might not order such a procedure as an exercise of his equitable powers."); Annot., Furnishing of Bond as a Prerequisite to Issuance of Temporary Restraining Order, 73 A.L.R.2d 854, § 2 at 856 (1960). LTD Commodities is closely on point and fully supports the determination below.

II.
After extensive hearings, see and compare AOT, Inc. v. Hampshire Management Co., 653 So.2d 476 (Fla. 3d DCA 1995), and cases cited at 478, the trial court fixed the amount of the bond at $446,290.89. It did so upon an evaluation of the competing interests involved, including "each party's hardship and likelihood of ultimate success," LTD Commodities, at 407, and the fact that the records in question really belong, not to either party, but to the respective patients.[2] We find no error or abuse of discretion in this determination. See Fidelity & Casualty Co. v. D.N. Morrison Constr. Co., 99 Fla. 309, 126 So. 151 (1930); Cushman & Wakefield, Inc. v. Cozart, 561 So.2d 368 (Fla. 2d DCA 1990).
Specifically, although the contention presents the most difficult issue in the case, we reject Archive's argument that, notwithstanding the extent of its claim was hotly disputed on the merits, the court was required to set the bond at no less than the full amount of its demand of $2.5 million. We believe that this position is in erroneous conflict with the principle that decisions of this sort should be based upon an assessment of all the competing equities, including not only what is sought by the offended party, but the "likelihood of [its] ultimate success." LTD Commodities, at 407.
Archive's heavy reliance on State v. Miller, 373 So.2d 677 (Fla.1979) is essentially misplaced.[3]Miller upheld the constitutionality of section 713.76, Florida Statutes (1977), which permitted release of a possessory lien established by section 713.58 in favor of persons providing labor and services on personal property, upon the posting of a bond "in the amount of the final bill" rendered by the lienor. But this provision was sustained as sufficiently protecting the lienor's rights, even though *363 really, only becauseno hearing on the merits at all was statutorily provided. This case, in which an adversarial hearing was afforded below, presents no such issue and requires no such condition. See North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); Mitchell v. W.T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). While it is true, as the court euphemistically said in Miller, that the very purpose of a possessory lien is to provide "leverage[4] looking solely toward full payment," 373 So.2d at 680, there is nothing in the law to require that a lienor be permitted to coerce a settlement of its underlying claim simply by a unilateral determination as to its amount which would make it financially impossible for the hospital otherwise to have access to its property.[5]
Affirmed; certiorari denied.
NOTES
[1] 677.209 Lien of warehouseman.

(1) A warehouseman has a lien against the bailor on the goods covered by a warehouse receipt or on the proceeds thereof in his or her possession for charges for storage or transportation (including demurrage and terminal charges), insurance, labor, or charges present or future in relation to the goods, and for expenses necessary for preservation of the goods or reasonably incurred in their sale pursuant to law. If the person on whose account the goods are held is liable for like charges or expenses in relation to other goods whenever deposited and it is stated in the receipt that a lien is claimed for charges and expenses in relation to other goods, the warehouseman also has a lien against him or her for such charges and expenses whether or not the other goods have been delivered by the warehouseman. But against a person to whom a negotiable warehouse receipt is duly negotiated a warehouseman's lien is limited to charges in an amount or at a rate specified on the receipt or if no charges are so specified then to a reasonable charge for storage of the goods covered by the receipt subsequent to the date of the receipt.
(2) The warehouseman may also reserve a security interest against the bailor for a maximum amount specified on the receipt for charges other than those specified in subsection (1), such as for money advanced and interest. Such a security interest is governed by the chapter on secured transactions (chapter 679).
(3) A warehouseman's lien for charges and expenses under subsection (1) or a security interest under subsection (2) is also effective against any person who so entrusted the bailor with possession of the goods that a pledge of them by him or her to a good faith purchaser for value would have been valid but is not effective against a person as to whom to document confers no right in the goods covered by it under s.677.503.
(4) A warehouseman loses his or her lien on any goods which he or she voluntarily delivers or which he or she unjustifiably refuses to deliver.
[2] Archive correctly points out that no patients' interests have been affected by the litigation because it has freely permitted access to the records when issues of their health have arisen. While this is certainly an equitable consideration to be weighed on Archive's side, its practice also shows that it has not, because it could not conscientiously have done so, insisted on its now-asserted right to hold all the records in ransom for a full payment of the amount it claims is due. Indeed, in legal contemplation, it may have abandoned its lien rights to that extent. See U.C.C. § 7-209(4) (2003); Foster v. Thornton, 131 Fla. 277, 179 So. 882 (1937); 34 Fla. Jur.2d § 32 Liens, at 638 (2000); 78 Am. Jur.2d § 73 Warehouses, at 207 (2002).
[3] It must be said that the required bond in LTD Commodities was in the amount the lienor claimed was due for services rendered. See also Wintter v. Fabber, 618 So.2d 375 (Fla. 4th DCA 1993). This determination, however, was the result only of the same balancing and evaluative process which in this case happened to yield a different outcome.
[4] Although the hospital's characterization of the process as "extortion" may not exceed the bounds of permissible advocacy, a legitimate legal tool is not rendered illegitimate by calling it a bad name.
[5] We find no merit in any of the other positions asserted by either party.