(18 Misc. Rep. 231.)

### LATHERS v. COATES.

(Supreme Court, Appellate Term, First Department. October 29, 1896.)

1. LANDLORD AND TENANT—EVICTION—FOUL ODORS.
    Foul odors arising from defective plumbing, which are a menace to the health and comfort of the tenant and his family, the cause of which the landlord refuses to remedy, render the premises "untenantable," within Laws 1860, c. 345, authorizing the tenant to abandon the premises.

2. SAME—DELAYED REPAIRS—EFFECT.
    The landlord, after failing to use reasonable diligence to restore the premises to a tenantable condition, on notice from the tenant of his intention to abandon the premises as soon as he can make arrangements, cannot, by commencing the delayed repairs before the tenant has in fact abandoned the premises, deprive him of the right to abandon the same.

Appeal from Eleventh district court.

Action by Richard Lathers against Foster Coates for rent for the months of March, April, and May, 1896, under a lease dated September 9, 1895, for the term of one year from October 1, 1896, of an apartment in house No. 324 West Fifty-Seventh street, in the city of New York. The answer sets up as a defense that defendant was induced to lease the apartment by false representations as to the sanitary condition of the plumbing; that plaintiff negligently permitted the premises to become untenantable, whereby defendant was evicted. There was a judgment in favor of defendant, and plaintiff appeals. Affirmed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Joseph Wamsley, for appellant.
Albridge C. Smith and Smith & White, for respondent.

DALY, P. J. The justice found that the proof clearly established the presence, for a considerable period, of foul and offensive smells and odors in the defendant's premises, and in the halls of the building in question, which were a menace to the health and comfort of the defendant and his family, and justified him in abandoning the premises; that the extent of these nuisances was admitted by the plaintiff's own witnesses; that they seriously interfered with the beneficial enjoyment of the premises, and could have been easily cured by the plaintiff by the application of proper remedies, which he did not attempt with reasonable diligence; and as the premises became unfit for occupancy, and their condition made it necessary for defendant to remove, the defense of eviction was made out,—citing Tallman v. Murphy, 120 N. Y. 346, 24 N. E. 716. It is not possible to see how the justice could have come to any other conclusion. The defendant moved about the middle of February. Odors first became noticeable in November or early in December, and repeated complaints were made by the tenant to the superintendent. "Disinfectants," so called, and perfumes, were resorted to without effect. Finally the board of health intervened, and extensive repairs were made upon the plumbing throughout the building. Holes large enough to be visible were found in the pipes in the tenant's apartments, and defects were found in the soil line, the waste lines, and the joints.

While the question as to what amounts to an untenantable condition is essentially one of fact, depending in each case upon the particular circumstances shown, there is, nevertheless, value in former decisions which may be compared in their facts with the special case in hand. In Tallman v. Murphy, supra, an odor of coal gas sufficient to make the tenants sick, and smoke in some of the rooms, and loud explosions which shook the building, were held sufficient to constitute an eviction. In Tallman v. Earle, 3 Misc. Rep. 76, 23 N. Y. Supp. 17, the smell of burning wood, so continuous and marked as to cause apprehensions of fire, was held sufficient. In Thalheimer v. Lempert (Sup.) 1 N. Y. Supp. 470, a stench arising from defective plumbing, coupled with the want of a cold-air box connected with the furnace, was deemed enough. So, also, in Sully v. Schmitt, 147 N. Y. 248, 41 N. E. 514, a stench from the sewer upon adjacent premises of the same landlord was held to be tantamount to eviction. It is not alone the fact that it is a disagreeable odor, offensive to the sense of smell, but that it signifies a menace to life or health, and the testimony justifies the tenant in abandoning the premises. And so with indications of unsafety, of damage from fire, or the collapse of the building. To suffer some inconvenience is one thing; to endanger life or health is another. On this trial an extreme case was made out in favor of the tenant.

The appellant objects that the answer fails to allege that the defects complained of were not due to gradual decay, and that the statute of 1860 (chapter 345) does not contemplate a condition arising from gradual deterioration, but only one due to some sudden and unexpected action of the elements, or other cause. Lansing v. Thompson, 8 App. Div. 54, 40 N. Y. Supp. 425, following Suydam v. Jackson, 54 N. Y. 450. The record does not show that that question was

raised at the trial, but, on the contrary, appellant's own witnesses accounted for the defects upon the theory that the erection of a large and high building upon the adjacent lot had so affected the landlord's building as to cause these defects.   There was no sufficient evidence that the breaks in the pipes were caused by the fault of the tenant in allowing articles to be placed against them; and while the lease provided that the tenant should, at his own expense, make all repairs required to plumber work when damaged from misuse or neglect, there was no evidence that the damage arose from any such cause, but rather from causes operating from without the building.

But it is further claimed that the premises had been restored to a tenantable condition before the tenant vacated them, and that, as the defect did not continue up to the time of the abandonment, his removal was not justified.   Ryan v. Jones, 2 Misc. Rep. 65, 20 N. Y. Supp. 842.   In that case, the tenant, going out in April, as the cold began to moderate, attempted to justify his removal by the landlord's failure to provide sufficient heat during the preceding cold period.   But the circumstances here are very different.   On the 8th of February the tenant gave notice that he was going to vacate as soon as he could make proper arrangements.   On the 14th or 15th of that month he moved out, on which date the repairs were in progress, the bathroom being then disordered with the débris which had been torn away to get at the pipes that were concealed.   Instead of assigning past conditions as a reason for removal, as was done in Ryan v. Jones, the defendant assigned a present condition, and the proof justified it.   It would be a hardship upon an aggrieved tenant in such cases if the law should hold, for instance, that he could not hire new premises to which to take his family except at the risk of being held to payment for the old one, if in the meantime the delinquent landlord should make the delayed repairs.

The judgment should be affirmed, with costs.   All concur.