(28 Misc. Rep. 539.)

## MARKS v. DELLAGLIO.

(Supreme Court, Appellate Term. July 26, 1899.)

LANDLORD AND TENANT—CANCELLATION OF LEASE—UNINHABITABLE BUILDING—EVIDENCE.

In an action for rent, where the defense is the alleged uninhabitable condition of the premises, it is error to exclude a conversation had between plaintiff's agent and defendant's manager, offered for the purpose of showing the real reason why defendant vacated, where such manager has had sole charge of defendant's business on the rented premises, and is chief witness for the defendant as to the objectionable condition.

Appeal from municipal court, borough of Manhattan, Seventh district.

Action by Esther B. Marks against Nicola Dellaglio. From a judgment in favor of defendant (59 N. Y. Supp. 707), plaintiff appealed. Reversed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVENTRITT, JJ.

Beecher & Scoville, for appellant.

Hyman Levy, for respondent.

MacLEAN, J. This action was brought to recover $157.50, the rental of a basement for March, April, and May, 1898, stipulated under a lease dated the 1st day of August, 1889, for the period of 9 years and 9 months, at a graduated and increasing rental, payable monthly in advance, and whereunder the defendant agreed to make all his own repairs during the continuance of the lease, such as plumbing work, carpenter work, and other repairs. The premises covered by the lease were part of the basement of a large building at the corner of Pell and Chatam streets, containing a number of separate floors and stores occupied for, among other purposes, a lodging house, liquor store, and Chinese restaurant. The portion demised to the defendant was known as "Basement No. 4." It was occupied and to be occupied as a barber shop. In his answer, the defendant alleged that the shop occupied by him was rendered uninhabitable and unhealthy by reason of foul odors which emanated from toilets, sewer, waste, and foul-air pipes in the house, beyond his control, and that by reason thereof he, on or about the 30th of June, 1897, vacated the premises, and surrendered possession thereof to the plaintiff. The defendant did not appear. His chief witness was one Alterisi, his stepson and foreman, who had had sole charge of the place and business for eight years. Alterisi, whose testimony

was somewhat vague and indefinite as to dates and times, testified that when the son of the plaintiff came around on the 1st of July to ask for the rent, he was told, "We are going to move." Alterisi said he left the place about the 1st of July; he had smelled vile odors in May or June; it was always a little bit, but in May and June it was very bad, and he could not stand it; that the customers, of whom he had named three, complained; that, at the time of leaving, the condition was very bad,—there was a vile odor, a sewer smell; that he made objections, he thought, in the early part of May, 1897, to the plaintiff's husband first, and afterwards to her son, telling them that there was a very bad smell in the place, and he could not stay any longer unless they did some repairs; and, on cross-examination, that he had noticed the smell before,—some time in 1896,—and that he always made complaint about it when the rent was asked for in May, 1896, and 1897. He was not sure of the exact date of moving out. He thought that it was not, and denied that it was, as late as testified to by others,—towards the end of July. He evaded an answer as to whether he noticed odors from the water-closet, which he said he had had repaired during the early part of 1897, as it was leaking. The defendant's counsel also testified for him that he had been shaved there occasionally, that he was familiar with the odor of sewer gas, and detected it on the premises from June, 1897, up to the middle of June, when he went away to the country; but he would not say, although asked directly, that he stopped going there on that account. One Gillio, who worked for Alterisi a couple of days in the early part of May, thought he had noticed an odor, putting him in mind of going into a toilet room. One Costaccio, who was in the place two or three times in the summer of 1897, noticed an odor "like a sewer busted," but did not detect it on each occasion he was there. An undertaker,—one Dacigalupo,—who had been getting shaved there for years, said there was always a little smell downstairs every summer for two or three years previous, but not as bad as that before the summer of 1897, when around May and June and July the smell was like a water-closet, sewer, something fierce, and he could not go there any more. Alterisi says he was out on the 1st of July. Others say that he moved into his new place on or after the 20th. These four persons, apparently not unwilling witnesses, gave all of what might be called lay testimony for the defendant, for whom, however, was called one experienced person, Mr. Wheeler, an inspector of the health department, who upon a complaint (by some one not disclosed) visited the premises about the middle of June, and by a "peppermint test" showed the escape of odors from a source which he could not ascertain, and who thereupon gave an order to repair the house drain, the only visible part of which was an iron pipe in the areaway, and which was broken. On the 28th, returning for reinspection, he found that the plumbing had been dug up, and, in the cellar of No. 2 Mott street, that an earthenware house drain, of the kind in vogue about the time this building apparently was erected, was broken, and the ground about it was saturated from the sewage from the building; then he recommended that the earthenware pipe be replaced by iron,

under the present statute. He could not say that the leakage went under the premises of the defendant, in which latter he found, on the partition between No. 4 and No. 2, a water-closet, of which the soil pipe entered into the main defective drain; nor could he say there were odors in the barber shop except that after the test the odor of peppermint was extremely strong there, showing sewer air escaping into it. The conditions during the work were, he said, of course worse than they had been before the cellar was dug up, because the foul ground was exposed. It was only on his second examination, when the plumbers were at work digging up the adjoining cellar and the drain, that he discovered the condition of the drainage pipes underneath the surface, and which could not be ascertained previously without resort to some one of the tests in use by the department,— peppermint, or smoke, or compressed air. It appeared, without contradiction, that repairs and radical remedies were undertaken and begun by the son of the plaintiff, in her absence in Europe with her husband, immediately after the discovery of the trouble by the inspector; the plumber employed testifying that he began work about the middle of June, and prosecuted the repairs recommended by the board of health diligently, the apparent delay in completing them having been occasioned by the change made in the directions from the health official upon the unexpected discovery that the drain had become dilapidated, and which change required much of the work already done to be done over. From all this it appeared that the malodorous condition which the defendant claims made the shop uninhabitable, thus releasing him from liability to pay the rent, and authorizing him to quit the premises, under chapter 345, Laws 1860, did not arise suddenly, or through anything which could be called an occurrence, but arose from the gradual deterioration of a drain,— that is, from failure to make repairs ordinary in a way, but the need of which was not likely to be observed save by an expert employing the tests of his art, and not even so to be detected upon a first examination. The defendant, then, does not bring himself within any of the cases upon which his counsel relies, for the professed cause of the alleged uninhabitability of the premises was not brought about by acts done or suffered by the landlord, who promised to, but did not, bring a remedy (Tallman v. Murphy, 120 N. Y. 345, 24 N. E. 716); nor because of the affirmative acts and repeated neglect of the landlord after notice (Sully v. Schmitt, 147 N. Y. 248, 41 N. E. 514); nor by a nuisance which could have been easily cured by the application of proper remedies which the landlord did not attempt with reasonable diligence (Lathers v. Coates, 18 Misc. Rep. 231, 41 N. Y. Supp. 373). Furthermore, it is incumbent upon one who would have himself relieved of his lease under the statutory innovation just cited to show that the premises became untenantable and unfit for occupancy without any fault or neglect on his part. This the defendant failed to do, for, assuming that there was a disagreeable—even offensive—odor in the barber shop, it would seem, as testified to by the foreman and his customers, and by the testimony of the one expert in the case, that such odors came into the shop through the soil pipe of the water-closet, which the defendant himself was bound to keep in repair, and

which would permit the air and odors to pass through it only upon its being in bad order, and so neglected as to be without a seal. The defendant's foreman evaded answering whether he had noticed odors from the closet. He said he had repaired it because it was leaking, thus indicating the defect, and the only defect, discernible from the evidence which would permit the condition of which the defendant complained. The plumber, too, testified that he found the closet in bad condition. This would furnish a cause not only possibly, but most probably, occasioning the condition of which the defendant complains, and bring the defendant under the rule that a person must fail where the damages he claims in an action were occasioned by one of two causes, for one of which his opponent is responsible, and for the other of which he is not responsible, and such person does not show that the damages were produced by the cause for which his opponent is responsible. The judgment should therefore be reversed, because the defendant has failed to sustain the burden of proving the facts which would make out his defense. Aside from this, reversal is necessary because of two errors respecting the rejection of evidence upon the trial. The learned justice refused to receive, upon the objection of the defendant, two instruments which, being marked for identification, have come up with the record, and show that in November, 1896,—four or five months after the alleged complaints about the offensive odors, and at which time the defendant had, according to his evidence, and should have, exercised an option to quit the premises,—the defendant, in proceedings to dispossess him for failure to pay rent, had practically renewed and reaccepted the terms of the lease under which he took possession of the premises in 1889, and thereby waived any claim to their untenantableness. Again, when the plaintiff's son, who, in her absence abroad, having learned of the discovery of the health inspector, promptly ordered making the recommended repairs, began to state a conversation with the defendant's foreman and stepson tending to show the real reason and circumstances attending the removal, he was interrupted with an objection by the defendant's counsel as to conversations not with the defendant, and the court thereupon stated, "I will exclude on your motion all conversation had between the witness and Alterisi." But Alterisi was not only intimately related to the defendant; he was his manager, and sole conductor of the business, and had been such for eight years. He was also almost the only witness who had testified to circumstances upon which could be predicated the untenantableness of the premises for the purposes for which they were leased, and he was the sole witness for the defendant as to complaints respecting such condition, which complaints he claims to have made to her husband and to her son. The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event.

FREEDMAN, P. J., and LEVENTRITT, J. We concur on the ground that it was error to exclude the evidence of the conversations between the plaintiff's son and the defendant's manager.