· Robert C. Hogue v. D. N. Morrison Const. Co.

156 So. 377.

Division, B.

Opinion Filed June 23, 1933.

Opinion on Rehearing Filed July 3, 1934.

*Miller & McKay*, for Appellant;

*A. M. Reder, M. D. Price, C. W. Zaring, C. D. Benson, B. E. Carey, Bart A. Riley, Hudson & Cason* and *Carl T. Hoffman*, for Appellees.

BUFORD, J.—D. N. Morrison Construction Company, Incorporated, of Virginia, a corporation created and existing under the laws of the State of Virginia, filed suit in Dade County against Robert C. Hogue and others therein named. Coley & Peterson, Incorporated, of Virginia, a corporation created and existing under the laws of the State of Virginia, filed suit against Robert C. Hogue and others therein named. Each of these suits was instituted for the purpose of foreclosing a lien for labor and material alleged to have been furnished in the construction of a certain building.

George Forrey and Sol Meyer, as Trustees, filed a suit to foreclose a mortgage on the lands on which the building involved in the other suit was located, which, of course, included mortgage on the building. Robert C. Hogue and others were made parties defendant.

Bayshore Operating Company, a corporation organized and existing under the laws of Florida, filed suit against Robert C. Hogue and others to foreclose a mortgage on the same property. Many other parties claiming an interest in the property or a lien thereon were made parties defendant in these suits. These suits were finally consolidated.

Voluminous testimony was taken before the chancellor and final decree was rendered. The decree awarded to D. N. Morrison Construction Company, Inc., of Virginia, a lien superior to all others for a stated sum. It next awarded to Coley & Peterson, Inc., of Virginia, a lien prior to all others except that of D. N. Morrison Construction Company, Inc., of Virginia, on the property involved. It is unnecessary for us to discuss other features of the decree.

Robert C. Hogue, the appellant here, in his amended answer to the amended bill of complaint of Coley & Peterson, Inc., of Virginia, and also in his amended answer to the amended bill of complaint exhibited by D. N. Morrison Construction Company, Inc., of Virginia, incorporated the following allegation:

"And this defendant says, further answering said bill of complaint, that the complainant is, and at all times herein referred to has been, a corporation in the State of Virginia, and in the entering into of the contract herein sought to be foreclosed and in performing such part of said contract as was performed by complainant, was doing business within the State of Florida in violation of the statutes of the State of Florida, and did not qualify to do business in the State of Florida until long after the work for which a lien is herein sought to be foreclosed had been completed, by reason whereof complainant is not entitled to the benefit of the statutes of the State of Florida giving a lien upon real estate for work done and materials furnished, and even though by reason of a saving clause of the statutes relating to foreign corporations doing business in the State of Florida, complainant might have the right (which right this defendant does not in anywise concede or admit) to enforce his contract made while it was not qualified to do business in the State of Florida by qualifying thereafter, nevertheless

the complainant cannot, while illegally doing business in the State of Florida, claim the benefit of a mechanic's or materialman's lien created by the statutes of the State of Florida."

The record shows that each of the Virginia corporations was not authorized to transact business in this State as a corporation until after the completion of the work for which they each respectively claimed liens on the property. The record further shows that prior to the expiration of ninety days from the date of the completion of the work each corporation qualified under the statutes of Florida to do business in this State and that notice of liens were filed subsequent to the qualification while other notices of liens had been filed prior to such qualification. The question was, therefore, squarely presented and is presented here as to whether or not a foreign corporation may come into the State of Florida and do business, that is, perform the work of construction of buildings or other structures, and by the performance of such construction work, while not qualified to do business as a corporation in this State, acquire statutory liens upon the property upon which the work is done and the materials are furnished.

Prior to the enactment of Chapter 5717, Acts of 1907, there was no inhibition against a foreign corporation doing business in this State. See Duke v. Taylor, 37 Fla. 64, 19 Sou. 172; Indian River Mfg. Co. v. Wooten, 55 Fla. 745, 46 Sou. 185. But Chapter 5717 provided a general prohibition against corporate recognition of unlicensed foreign corporations and made the acts of foreign corporations not qualified to do business in this State absolutely unlawful. See Commercial National Bank v. Jordan, 71 Fla. 566, 71 Sou. 760. Chapter 6876, Acts of 1915, so modified the Act of 1907, *supra,* as to make the contracts of foreign corpo-

rations valid but unenforceable until a permit to do business shall have been obtained. See Brecht v. Bur-ne Corporation, 91 Fla. 345, 108 Sou. 173; Blackshear Mfg. Co. v. Sorey, 97 Fla. 437, 121 Sou. 103; Herbert H. Pape, Inc., v. Finch, 102 Fla. 425, 136 Sou. 496.

This modification, however, did not give foreign corporations not qualified to do business in this State any rights other than the right to enforce a contract after having qualified and the right to acquire, hold and convey property. It accorded to such corporations no right which had been withheld from such corporations by the Act of 1907, *supra*, to transact general business in this State and neither did it accord to such corporations the right to acquire and enforce a lien for labor performed and materials furnished in the construction of the buildings or other structures which it performed or furnished in violation of the provisions of Chapter 5717, Acts of 1907, as amended and modified by Chapter 6876, Acts of 1915.

It may be conceded that under the provisions of these Acts these foreign corporations may have had the right to enforce the provisions of a contract which they had entered into which contemplated the engaging of such corporations in business in this State in violation of these statutes. But these were not suits to enforce a contract. These were suits invoking the provisions of statutes creating statutory liens. The right to the lien does not rest in contract. It cannot be created by contract between the parties, under circumstances other than those contemplated by the statute. The lien is statutory, not contractual. Harper Lbs. & Mfg. Co. v. Teate, 98 Fla. 1055, 125 Sou. 21; Drake Lbr. Co. v. Semple, 100 Fla. 1757, 130 Sou. 577.

The lien is acquired as between the owner and one in privity with the owner when the labor is performed or the

materials furnished. Bowery v. Babbit, 99 Fla. 1151, 128 Sou. 801.

The record shows in this case that at the time the alleged labor was performed and the materials were alleged to have been furnished each corporation performed such labor and furnished such material in violation of the law of this State and, having furnished such material and performed such labor as corporations in violation of the laws of this State, they were not in a position to acquire, and did not acquire, liens which are entirely creatures of the statutes of the State. It, therefore, follows that the decree of the chancellor adjudicating a lien in favor of these Virginia corporations was error. This does not mean that they may not each proceed against the defendants by suits based upon contract, which course they are allowed to pursue by statute.

The appellees, the two Virginia corporations, filed motion to dismiss the appeal which was denied by this Court on April 19, 1932. That motion has been argued in the briefs filed. The ground of the motion most earnestly contended for is that the cause should be dismissed because the appellant here took the appeal individually and did not make other parties standing with him on the same side of the docket in the court below co-appellants, but made all other parties to the suits, both complainants and defendants, parties appellee here. This the appellant had a right to do. He is required to bring all parties at interest before the court below into this Court, but in a chancery case it is immaterial whether they are brought here as appellants or appellees because in equity the rights of all parties may be separately adjudicated, regardless of whether they be appellants or appellees, or regardless of whether they be complainants or defendants in the court below, and the purpose for bringing the parties into this Court is to have them

where the judgments and decrees will be binding upon them. That purpose is served regardless of whether they appear on the record here as appellants or appellees.

There are many other questions presented in the briefs filed for the various parties who have appeared in this Court in this cause, but inasmuch as the decree appealed from must be reversed and inasmuch as the decree to be entered in the lower court must eliminate the adjudication of any lien in favor of the two Virginia corporations, we deem it unnecessary to discuss the other questions sought to be presented by this appeal consisting of assignments of error and cross assignments of error by the various parties.

For the reasons stated, the decree should be reversed and the cause remanded for further proceedings not inconsistent with this opinion. It is so ordered.

Reversed and remanded.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL and BUFORD, J. J., concur.

BROWN, J., dissents.

BROWN, J. (dissenting).—This lien rests as much upon the duty of the owners to pay for labor and materials accepted by him as upon the right of the mechanic to demand payment. The *lien* was property. Section 6026 C. G. L. says that violation of the statute shall not affect "the title to property acquired, held or disposed of." And Section 6029 says that failure to comply with the Act shall not affect the validity of contracts made by a foreign corporation. See Pope v. Finch, 136 So. 496. This would cover implied contracts. The acquisition of the lien inures to any "person," regardless of residence, who performs labor or furnishes materials. See Section 5380 C. G. L. Corporations are persons within the meaning of the statute. The lien "is an interest in the property." See 227 Mass. 446, 116

N. E. 888. The non-compliance with the corporation stat-
ute does not destroy the operative force of the lien law.

## On Rehearing.

Terrell, J.—D. N. Morrison Construction Company,
Incorporated, and Coley and Peterson, Incorporated, both
general contractors of Virginia, entered into contract with
Robert Clay Hotel Corporation of Miami, the former to
construct Robert Clay Hotel and the latter to install the
plumbing and heating equipment therein. In September,
1926, each of said contractors filed its separate bill of com-
plaint to foreclose mechanic's liens against Robert Clay
Hotel Corporation which had under Section 3552, Revised
General Statutes of 1920, Section 5396, Compiled General
Laws of 1927, posted bond with Fidelity and Casualty
Company of New York as surety to release the liens sought
to be foreclosed. Fidelity and Casualty Company was made
party defendant to these causes, but disclaimed liability on
the bonds. Its objections were overruled and appeal was
taken to this Court. See Fidelity and Casualty Co. v. D.
N. Morrison Construction Company, Incorporated, of Vir-
ginia, 99 Fla. 309, 126 Sou. 151.

In July, 1931, by stipulation of counsel, an order was en-
tered consolidating the causes entitled in the preceding para-
graph with the suits of George Forey and Sol Meyer as
Trustees v. Robert Clay Hotel Corporation and Bay Shore
Operating Company v. Robert C. Hogue, et al (the last
two being mortgage foreclosures describing the lands on
which Robert Clay Hotel was situated) under the title of
D. N. Morrison Construction Company, Incorporated, of
Virginia, v. Robert C. Hogue, et al. A single final decree
was entered in all four suits which was subsequently on
motion for rehearing and reformation, amended and modi-

fied. From the final decree as amended and modified the instant appeal was prosecuted.

Counsel representing all parties to the consolidated cause have brought a variety of questions here for consideration. The main appeal was entered by Robert C. Hogue and cross-assignments of error were filed by appellees, George Forrey and Sol Meyer and Bay Shore Operating Company, but no brief was submitted in support of those filed by the latter, so they will be considered as abandoned.

Under the rule of logical technique, when thoroughly analyzed, the questions raised in an involved record will as instinctively arrange themselves in orderly sequence as the soldiers in a platoon will fall in line of duty. Treated in this order, an opinion expounding them is lucid and conclusive. Treated otherwise, it may be loose and a little short of abracadabra. The questions presented in the record under review arrange into a striking climax and will be so treated.

In the brief on behalf of appellee, Robert Clay Hotel Corporation, it is only contended that the chancellor erred in not requiring an audit of the books and records of George Forrey and Sol Meyer, as Trustees. This was a matter clearly in the discretion of the chancellor and neither the record nor the briefs disclose that his discretion was abused or that the complaining party was harmed in the exercise of it.

It is contended by the main appellant that D. N. Morrison Construction Company failed to comply with Sections 3523 and 3524, Revised General Statutes of 1920, Sections 5386 and 5387, Compiled General Laws of 1927, in that it did not furnish the Robert Clay Hotel Corporation a complete list of all sub-contractors, mechanics, and laborers employed in the construction of the Robert Clay Hotel.

The record discloses that the contract and specifications for the construction of Robert Clay Hotel required that such a list be furnished the architect. The record discloses that this was done as the contract required, but if it had not been, the building was inspected and approved by the architect, after completion, and it is now too late to lodge this complaint.

The next question considered raised an estoppel against D. N. Morrison Construction Company, Incorporated, asserting its lien against Robert Clay Hotel Corporation. This question admittedly has no application to the claim of Coley and Peterson, Incorporated.

The estoppel raised against D. N. Morrison Construction Company is grounded on the charge that Robert Clay Hotel Corporation secured a loan of $500,000 from Meyer Kiser Company for the purpose of constructing the Robert Clay Hotel. It is alleged that D. N. Morrison participated in the negotiations between the Robert Clay Hotel Corporation and Meyer Kiser Company for the loan, knowing that the lender advanced the money in the belief that the mortgage securing the loan was a first lien on the Robert Clay Hotel property, that the contractor, D. N. Morrison Construction Company received a large portion of the loan for labor and material, and made no attempt to correct the belief of the lender that his mortgage was to be a first lien.

If it had been D. N. Morrison's duty to advise Meyer Kiser Company of his lien and he had remained silent and that silence had induced them to make the loan, then the doctrine of estoppel would bar him from claiming a first lien. This, however, was not the case. The matter of the priority of liens was not discussed and Morrison's lien was fixed by statute of which Meyer Kiser Company was on notice. The fact that Morrison helped secure the loan in

no way affected the status of his lien and it is not alleged that he purposely deceived the lender. But it is contended that he did not speak when he should have and correct a false impression that the lender had. Morrison was not responsible for this and he had no ground to assume that the lender was not advised of the law of the case.

The evidence on this point is in hopeless conflict, but it fails to show that Morrison by word or deed deceived or misled the lender or that it altered its position by anything he said or did. There is direct and positive evidence that Morrison was requested to subordinate his lien to that of the Meyer Kiser Company and he declined positively to do so. On the record the chancellor declined to subordinate the lien of D. N. Morrison Construction Company to that of Meyer Kiser Company and his decision is not only supported by substantial evidence, it is supported by reason and logic. In this state of the record, we must decline to disturb it.

It is next contended that the lien of Coley and Peterson, Incorporated, should be adjudicated as subordinate to that of Meyer Kiser Company because the mortgage of the latter taken for the loan was recorded prior to commencing work on the part of the former. This question turns on the fact of when Coley and Peterson actually commenced work or furnishing material.

The mortgage to secure the loan of Meyer Kiser Company was recorded on July 24, 1925. The contract for the construction of the Robert Clay Hotel was executed July 7, 1925. The following day, $38,000 worth of material was ordered and on July 23, 24, 25, Mr. Peterson of Coley and Peterson, Incorporated, was on the ground and performed labor incident to the execution of the contract. Appellants contend that the lien of Meyer Kiser Company

should be adjudged superior to that of Coley and Peterson because no record was made of the work done by Peterson on the twenty-third of July, that said work was trivial and of no substantial value, and that Peterson was not a laborer and did not change his clothes and go on the job to perform any appreciable part of the contract.

The lien of Coley and Peterson, like the lien of D. N. Morrison Construction Company, arose by statute and not by contract. It was effective as soon as labor was performed or material was furnished. Like the evidence as to the Morrison Construction Company, the evidence as to when Coley and Peterson's lien attached is in hopeless conflict, but it is conclusively shown that $38,000 worth of material was ordered for Coley and Peterson's contract on July 8, 1925, that Peterson was a practical plumber, that he purchased material at a Miami hardware store on the forenoon of July 23 for the labor he performed on the 23rd, 24th, and 25th, and charged it to his expense account, and that the labor he performed on the twenty-third was a necessary part of the contract. Other circumstances support Coley and Peterson's contention and it appears that the trial court viewed the premises, heard all the testimony and found in favor of the lienor. His finding is amply supported and under the well settled rule of this Court, will not be disturbed.

This holding is not in conflict with Hoffman Construction Company v. Ward, et al., 97 Fla. 530, 121 So. 800, where we held the lien of a mortgage loan superior to a mechanic's lien when the mechanic lienor assisted in securing the loan knowing at the time that it (the mortgage loan) was to be a first lien on the lands.

A bulky record discloses that the trial of this case in the lower court was concentrated on the two preceding ques-

tions affecting the matter of estoppel and priority of liens between the statutory lienors and the lender. Disposition of these questions is conclusive of those raised by cross appellees, George Forrey and Sol Meyer, as Trustees.

The concluding and primary question brought here for consideration is whether or not a foreign corporation not having qualified and received a permit to transact business in Florida, can claim the benefit of the mechanic's lien law for labor or material furnished and will its subsequent qualification have such retroactive effect as to give it the benefit of the legal right it would have acquired if it had been qualified when said labor and material was furnished.

In answer to this question, these facts are pertinent: D. N. Morrison Construction Company and Coley and Peterson are Virginia corporations and came to Florida to construct the Robert Clay Hotel without first qualifying with the Secretary of State and receiving a permit to transact business in Florida as the law directs. The hotel was completed and accepted but not fully paid for when the contractors filed their notice of lien under Section 3495, *et seq.*, Revised General Statutes of 1920, Section 5349, *et seq.*, Compiled General Laws of 1927. They were then advised that before they could pursue their remedy in the courts of this State they would have to qualify with the Secretary of State. They proffered to do this, but found that their name had been preempted by another corporation in Florida. They then amended their Virginia charter by changing their name and under such name as changed, applied for and were given a permit to transact business in this State. They then within ninety .days from the completion of the contract to construct the hotel, filed their second notice of lien under the statute as last numbered and instituted this suit to foreclose.

Prior to 1907, the rule in Florida governing the business of foreign corporations was general throughout the country, viz., when a corporation has been organized under the laws of a sister state for the transaction of any business, it may by comity existing between the states, transact business in this State, provided it be not in contravention of our laws or public policy. This also included the right to hold and transfer property. Under this rule of comity, the courts of Florida would entertain a suit brought by a foreign corporation. Duke v. Taylor, 37 Fla. 64, 19 So. 172; Indian River Mfg. Co. v. Wooten, 55 Fla. 745, 46 So. 185.

In 1907, the Legislature enacted Chapter 5717, Sections One and Four of which are as follows:

"Section 1. That no foreign corporation shall transact business or acquire, hold, or dispose of property in this State until it shall have filed in the office of the Secretary of State a duly authenticated copy of its charter or articles of incorporation, and shall have received from him a permit to transact business in this State."

"Section 4. Every contract made by or on behalf of any foreign corporation affecting its liability or relating to property within the State before it shall have complied with the provisions of this Act shall be void on its behalf and on behalf of its assigns, but shall be enforceable against it or them."

The effect of this Act was to interpose a complete bar to any foreign corporation transacting business, or owning or disposing of property in this State, without a permit to do so. To effectuate the purpose of the Act, it vitiated any contract made on behalf of such foreign corporation, but made such contracts enforceable against it. Other than the fact that its contracts were void and impliedly non-enforceable, it imposed no penalty except the punitive provisions

of·Section Eight, which are not relevant at this time. Other provisions of the Act are not material to the disposition of this cause.

In 1915, the Legislature enacted Chapter 6876, Sections One and Two of which amended Sections One and Four of ·Chapter 5717, Acts of 1917, now Sections 4095 and 4098, Revised General Statutes of 1920, Sections 6026 and 6029, Compiled General Laws· of 1927, and as amended are as follows:

"Section 1. That no foreign corporation shall transact business, or acquire, hold or dispose of property in this State until it shall have filed in the office of the Secretary of State a duly authenticated copy of its charter or articles of incorporation, and shall have received from him a permit to transact business in this State; and any foreign corporation which shall violate the provisions of this section shall render itself, its officers and agents severally liable to the penalties and fines provided in Section 8 of this Act, but no violation of this Act shall affect the title to property thus acquired, held or disposed of in violation of the provisions hereof.

"Section 4. That the failure of any such foreign corporation to comply with the provisions of this Act shall not affect the validity of any contract with such foreign corporation, but no action shall be maintained or recovery had in any of the courts of this State by any such corporation, or its successors or assigns, so long as such foreign corporation fails to comply with the provisions of this Act."

The effect of the Act of 1915 was to lift the bar interposed by Act of 1907 against foreign corporations transacting business in Florida, provided they qualify and secure a permit to do so. The penal provisions of Section Eight of the 1907 Act were imposed on the officers and agents of

the foreign corporation for failure to do this and our courts were closed against them till they qualified, but their contracts were not affected, neither was the title to property acquired, held or disposed of by them before securing a permit affected.

In fine, the pith of the Act of 1915 was to require foreign corporations to qualify and secure a permit to transact business, acquire, hold, or dispose of property in this State and to continue in effect the penal provisions of the Act of 1927 against its officers and agents for failure to do this. If it fails to domesticate as required, neither the title to property acquired, held, or disposed of by it in violation of the Act, nor the validity of any contract with such corporation shall be affected, but no action shall be maintained in the courts of this State or recovery had thereon so long as it fails to qualify. Brecht v. Bur-ne Corporation, 91 Fla. 345, 108 So. 173; Blackshear Mfg. Co. v. Sorey, 97 Fla. 437, 121 So. 103; Herbert H. Pape, Inc., v. Finch, 102 Fla. 425, 136 So. 496.

Under the Act of 1907, any contract entered into by a foreign corporation not qualified in this State was rendered void *ab initio* and by implication non-enforceable, while under the Act of 1915, it was specifically provided that the validity of such contracts should not be affected. The Act of 1915, in other words, was a complete amelioration of the void provisions of the Act of 1907. No penalty or punishment was retained in the Act of 1915 except the punitive provisions of the Act of 1907 and the suspension of the right to prosecute any section for recovery on any contract in the courts of this State so long as the corporation fails to qualify and secure a permit to transact its business. Its contracts being valid, the implied penalty of non-enforceability in the Act of 1907 was repealed.

This conclusion is buttressed by the fact that the Legislature of 1915 also enacted Chapter 6875 to "remove under certain terms and conditions the invalidity created by Chapter 5717, Acts of 1907." An examination of the body of this Act discloses that provision was made to remove *in toto* all invalidities on the acts of foreign corporations incurred for their failure to secure a permit to transact business under the Act of 1907. Chapter 6876 of the Acts of 1915 is typical of the general legislative policy of hospitality to foreign corporations in this State and any other interpretation of Chapter 6876, Acts of 1915, than that given in this opinion would be in the teeth of this legislative policy.

The lien brought in question arose from statute and not out of contract, though the statute out of which it arose contemplated a contract before the lien could attach. Under the view we take, it becomes unnecessary to treat the question of the effect of Chapter 6876, Acts of 1915, on a statutory lien. The rule is well settled that such liens are property. Seaboard All-Florida Ry. Co. v. Leavitt, 105 Fla. 600, 141 So. 886; Fisher v. Star Co., 231 N. Y. 414, 132 N. E. 133; 19 A. L. R. 937; Boston and L. R. Corp. v. Salem & L. R. Co., 2 Gray (Mass.) 1, text 35. Chapter 6876, Acts of 1915, specifically required that "no violation of this Act shall affect the title to property thus acquired, held or disposed of in violation of the provisions hereof." The lien brought in question was property and if acquired when not qualified title to it was not affected and it was enforceable as soon as the lienor qualified and received a permit to do business in this State.

It is not disputed that the appellees, D. N. Morrison Construction Company and Coley and Peterson, constructed Robert Gray Hotel before domestication, but under the Acts of 1915, and their contracts, they acquired a lien by

performing labor and furnishing materials for such construction. The enforceability of these liens in court was suspended until they domesticated, but this done, their status was no different from that of any other domestic or foreign litigant. Their lien was not affected by the Act of 1907. Other questions raised have been examined, but all are concluded by this opinion.

The opinion and judgment of this Court filed June 23, 1933, is accordingly rescinded and reversed and the judgment of the court below affirmed on rehearing.

Affirmed.

DAVIS, C. J., and WHITFIELD and BROWN, J. J., concur.

ELLIS and BUFORD, J. J., dissent.