308 EAST 79 STREET CORPORATION v. WILLIAM FOSTER FAVORITE.

149 So. 625.
Opinion Filed June 28, 1933.
Opinion on Rehearing Filed Sept. 20, 1933.

A writ of error to the Circuit Court for Palm Beach County, C. E. Chillingworth, Judge.

*A. Melrose Lamar,* for Plaintiff in Error;

*J. Stockton Bryan,* for Defendant in Error.

ADKINS, Circuit Judge.—308 East 79th Street Corporation, a New York corporation, the plaintiff in the court below, and the appellant here, filed this suit in the Circuit Court of Palm Beach County, Florida, against the defendant, William Foster Favorite, the appellee here, for past due rent on an apartment known as Apartment West Penthouse, a building known as 308 E. 79th St., in the Borough of Manhattan in New York City; the lease was executed in New York City and at the time of the institution of the suit in this case the defendant was a resident of West Palm Beach, Florida. Among the provisions of the lease was provided that the apartment was to be used and occupied as a strictly private dwelling and for a term to commence on October 1st, 1929, and to end September 30th, 1934, unless terminated as provided in the lease. The defendant was to pay five thousand dollars per annum for rent. The rent was payable: $2,500.00, being the rental from October 1st, 1929, to March 31st, 1930, to be paid upon the signing of the lease, and subsequent equal monthly payments of $416.67, in advance, to begin on April 1st, 1930, and to be paid on the first day of each and every month thereafter during the term of the lease. The lease was executed on the 15th day of August, 1929, and, at the time of the executing of the lease the apartment was not completed. The defendant did not move into the apartment until some time in April, of 1930, and vacated same about November 15th, 1930. The defendant paid the rent to November 1st, 1930. The plaintiff sued for rental due for November and December, 1930, and January and February, of 1931; the total amount claimed as rental being $1,666.68.

The declaration is in two counts. The first is the common count; the second is a special count in which there is

an allegation for attorney's fees. There were many pleas filed to the declaration, but all went out on motions to strike and demurrers except the first amended plea and the second Third Amended Plea; and, in order that the case may be understood, we give in full the two pleas:

"FIRST AMENDED PLEA:

"That on or about August 10th, 1929, the premises as described in Plaintiff's Declaration, were inspected by the Defendant and at which time the said premises were in the process of construction, that is to say, that the walls, roof, floor and windows, were only about half completed, and it was therefore impossible for this defendant to determine at that time whether or not said premises would be tenantable; that shortly thereafter said premises were leased to the defendant to be used and occupied as a strictly private dwelling apartment by the tenant and the family of the tenant and not otherwise, as shown by a copy of said lease attached to Plaintiff's Declaration;

"That said premises were not occupied by the defendant until April 15th, A. D. 1930; that during said months of July, August and September, 1930, this defendant then determined that the roof and sidewalls were so constructed that the heat from the rays of the sun made the apartment so hot, that is to say, that the temperature in the bedrooms at night reached 98 degrees Fahrenheit, and the temperature in the daytime on the porch reached 130 degrees Fahrenheit, thereby making it impossible for this defendant, or any other person, to use and occupy said apartment as a strictly private dwelling; and for two (2) weeks in July, 1930, and two (2) weeks in August and September, 1930, this defendant was compelled to vacate said apartment and live elsewhere on account of the terrific heat of said dwelling; that by reason of Chapter 51, Real Property Law, Section

227, Cahill's Consolidated Laws of New York, 1923, approved by the Secretary of State of New York on December 31st, 1923, and entitled to be read in evidence, which said laws were at the time of the execution of said lease, and at the time said apartment was vacated by this defendant, and are now the laws governing Landlord and Tenant in the State of New York, and which section reads as follows:

"'227. When Tenant May Surrender Premises. Where any building, which is leased or occupied, is destroyed or so injured by the elements, or any other cause as to be untenantable, and unfit for occupancy, and no express agreement to the contrary has been made in writing, the lessee or occupant may, if the destruction or injury occurred without his fault or neglect, quit or surrender possession of the leasehold premises, and of the land so leased or occupied; and he is not liable to pay to the lessor or owner, rent for the time subsequent to the surrender.'

"That this defendant quit and surrendered possession of the leasehold premises and of the apartment so leased and occupied on October 10th, 1930; and this defendant says that there was no express agreement made in writing to the contrary that the premises were to be untenantable, and defendant, therefore, says he is not liable to pay to the plaintiff rent from the time subsequent to the surrender of said premises and apartment."

## "2ND—THIRD AMENDED PLEAS

"Now comes the defendant, by his undersigned attorney, and for his second—third amended plea, by leave of the Court first had and obtained, says:

"That on or about August 10th, 1929, the premises as described in Plaintiff's Declaration, were inspected by the defendant, and at which time the said premises were in the

process of construction, that is to say, that the walls, roof, floor and windows were only about half completed and it was therefore impossible for this defendant to determine at that time whether or not the premises would be untenantable; that shortly thereafter said premises were leased to the defendant to be used and occupied as a strictly private dwelling apartment by the tenant and the family of the tenant and not otherwise, as shown by a copy of said lease attached to Plaintiff's Declaration;

"That at the time this defendant inspected the said premises on August 10th, 1929, the building incinerator was not in use; that the smoke from the building incinerator covered the entire apartment let to this defendant inside and out with a thick, greasy soot, thereby ruining draperies, furniture and clothing, all of which this defendant called to the attention of the Superintendent of the building in which the apartment of this defendant was situated, but nothing was done to remedy this condition after repeated requests and demands of the said defendant, that the defendant did not use the porch off said apartment until June 15th, 1930, at which time he became apprised of these facts, and by reason thereof the premises were untenantable and unfit for occupancy; that by reason of Chapter 51, Real Property Law, Section 227, Cahill's Consolidated Laws of New York, 1923, approved by the Secretary of State of New York, December 31st, 1923, and entitled to be read in evidence, which said laws were at the time of the execution of the said lease, and at the time said apartment was vacated by this defendant, and are now the laws governing Landlord and Tenant in the State of New York and which reads as follows:

" '227. When Tenant May Surrender Premises. Where any building, which is leased or occupied, is destroyed or

so injured by the elements, or any other cause as to be untenantable, and unfit for occupancy, and no express agreement to the contrary has been made in writing, the lessee or occupant may, if the destruction or injury occurred without his fault or neglect, quit or surrender possession of the leasehold premises, and of the land so leased or occupied; and he is not liable to pay to the lessor or owner, rent for the time subsequent to the surrender.'

"That this defendant quit and surrendered possession of the leasehold premises and of the apartment so leased and occupied on October 10th, 1930; and this defendant says that there was no express agreement made in writing to the contrary that the said premises were to be untenantable, and unfit for occupancy, and defendant, therefore, says that he is not liable to pay to the Plaintiff rent from the time subsequent to the surrender of said premises and apartment."

It was stipulated by the parties that the section of law styled Sec. 227, Cahill's Consolidated Laws of New York, as set out in full in defendant's Second Third Amended Plea, is the law of the State of New York and was the law at the period of time involved in this case.

The defendant resisted the plaintiff's claim upon the grounds that he did not move into the apartment until April, 1930, and that soon thereafter he discovered that the apartment was unfit for occupancy by reason of the heat and soot from the incinerator, as set forth in his pleas; that the incinerator of the building was so constructed and the apartment so arranged that the smoke, soot and cinders from the incinerator continually entered the apartment and that after the defendant had screened the apartment said screens failed to keep the smoke, soot, grease and cinders from entering the apartment and that it ruined all his dra-

peries, bedding, rugs and other furniture, and that they could not serve their meals on account of the soot and cinders getting in their meals; that the roof of the apartment was so constructed that it permitted no ventilation to enter the apartment and that the heat from the sun was so intense that it was impossible for the defendant and his family to stay in said apartment either day or night and that they had to leave the said apartment on numerous occasions in order to get relief from the heat; that the defendant complained to the plaintiff's agent a number of times about the condition of the apartment and requested that it be remedied, and that the plaintiff did nothing to remedy the condition; that the defendant did not know of the conditions of the apartment during the summer of 1930.

There was considerable evidence produced by each of the parties to maintain their respective pleadings. At the close of the plaintiff's testimony the court denied a motion of the plaintiff for an instructed verdict, and also denied a motion of the plaintiff for an instructed verdict at the close of all the testimony.

Among the charges given, the court instructed the jury that if they believed from the evidence that the defendant stayed in possession of the apartment after October 31, 1930, they should bring in a verdict for the plaintiff for one month's rental, with 8% interest, which the jury did and which is evidence of the fact that the jury fully understood all of the facts and the instructions of the court. The attorney's fee was agreed upon.

There is nothing in the lease between the parties which is contrary to Sec. 227, Cahill's Consolidated Laws of New York, as set forth above in the defendant's Second Third Amended Plea.

The plaintiff appealed from the judgment of the lower

court and has assigned twenty-six assignments of errors. We are of the opinion that there was no harmful error committed in the trial of the case; and, reaching that opinion, we have deemed it not necessary to comment on the assignment of errors.

The issue involved in this case was strictly one of fact to be passed upon by the jury. The question as to what amounts to an untenantable condition of the apartment is essentially one of fact, depending in each case upon the particular circumstances shown; and, in an action for rent the question of whether or not the leased premises became untenantable without the neglect of the tenant "through the elements or any other cause" so as to render available the statute relieving the tenant from liability for rent depends upon an inquiry of fact and is conclusively in favor of the tenant by an undirected verdict for him. (Lather's v. Coates, 18 Misc. 231, 41 NYS 373; Zenia v. Black, 59 Hun. 626 MEN, 14 NYS 107; Neserole v. Hoyt, 161 N. Y. 59; 55 N. E. 274.)

From the date, August, 1929, when the lease was executed, until the following April when the defendant moved into the apartment, the defendant had not seen the apartment.

There was evidence that the soot and cinders ruined the draperies, furniture and rugs and was ground through to the base of the rugs; that they were so greasy that the pattern of the rugs could not be seen and that while walking in the apartment it was like walking on a cinder path, and that the screening of the doors and windows by the defendant did not help; that the roof of the apartment was so arranged that the heat was so great at five o'clock in the morning that the thermometers in the bed rooms registered 98 degrees.

The question involved in this case is can a tenant, the defendant in error, by reason of Sec. 227, Cahill's Consolidated Laws of New York, quit a leasehold premises before the end of the term of the lease without liability for rental accruing thereafter where the premises leased are restricted "to be used and occupied as a strictly private dwelling apartment by the tenant and the family of the tenant and not otherwise," because: (1st) of faulty construction of the roof so that the rays from the sun made the apartment so hot that it was impossible for the tenant or any other person to use and occupy the said apartment as a strictly private dwelling; (2nd) of the building incinerator covering the entire apartment sought to be used with a thick and greasy soot (cinders) so that it would be impossible for the tenant or any other person to use and occupy the said apartment as a strictly private dwelling. (The Court answered these questions in the affirmative.)

The case was tried on the first amended plea, which set forth that by reason of Sec. 227, Cahill's Consolidated Laws of New York, abandonment was justified because the roof and sidewalls were so constructed that rays from the sun made the apartment so hot that the same became untenantable, making it impossible for the tenant or any other person to use and occupy the said apartment as a strictly private dwelling; and that, by reason of the said law the defendant vacated the apartment, and that he was not liable to pay the plaintiff rental for the time subsequent to the surrendering of the said apartment.

The case was also tried on the Second Third Amended Plea, which set forth that in view of Sec. 227, Cahill's Consolidated Laws of New York, the tenant (the defendant in error) was not liable for rent by reason of the fact that smoke from the building incinerator covered the entire

apartment let to the tenant with thick greasy soot (cinders), making the apartment untenantable and unfit for occupancy; and that, by reason of said law, the said defendant quitted and surrendered possession of the said apartment and is not liable for the rental after the vacating of the said apartment or premises; there being nothing to the contrary in said laws.

In Tallman v. Murphy, 120 N. Y. 345, 24 N. E. 716, which was an action to recover rental of an apartment, it appeared that there was an odor of coal gas which made the tenant sick; that the gas came from smoke from the flues of other premises occupied by other tenants; that there were loud explosions, day and night, which alarmed the tenants so that they left the premises, and that the explosions came from the water tank on the roof; it was held that the evidence sustained the claim of an eviction and justified abandonment of the premises under the section of the law above given.

One of the leading cases of the State of New York is Sully v. Schmitt, 41 N. E. 514, which cited as follows:

"The lease was for a term of three years, and described a front room on the ground floor of the Fillmore House in the City of Buffalo, which had formerly been the dining room of that hotel. It contained, among other provisions unimportant to be mentioned, the agreements of the lessee to keep the premises in good repair, to prevent them from being injured by fire or otherwise, and to keep "the premises hereby leased * * * in a cleanly and healthful condition." It was shown that the premises were leased for a barroom. They consisted of one room, with no windows or openings, except a door opening upon the street. The floor covered the entire room, with no aperture or access to a cellar beneath. Some four months after the defendant took pos-

session, he was allowed to make use of the space underneath the floor for the purpose of storing liquors and jugs, and then first became acquainted with its nature and condition. The case presented seems to be one as to which there should be no doubt with respect to the propriety of permitting the defendant to prove the facts set up in his defense, and contained in his offer of proof. If the evidence which he was not allowed to give should establish the existence of such a state of things as was set forth in the answer and the offer, and the abortiveness of his efforts to remedy it, through the continuance of acts by his landlord which rendered it impossible, there was an eviction at law, which warranted the abandonment of the premises, and exonerated the tenant from the payment of rent thereafter. There was neither any express nor any implied warranty that the premises were fit for habitation when leased, or for any purpose for which leased, but the landlord could not be instrumental in rendering them uninhabitable, and hold his tenant to his agreement to pay rent. If they became untenantable through her default and wrongful acts, then she did that which obstructed their beneficial enjoyment, and justified the tenant in abandoning them. It is a long-established and perfectly familiar rule that a physical eviction is not necessary to exonerate the tenant from the payment of rent. The landlord's act, though not amounting to a physical expulsion, may nevertheless be of so pronounced and offensive a character as to create a nuisance, which, by preventing the reasonable use by the tenant of the premises, would affect directly the consideration of the contract between them. Dyett v. Pendleton, 8 Cow. 727; Edgerton v. Page, 20 N. Y. 281; Boreel v. Lawton, 90 N. Y. 293. Applying the rule to the present case, if the defendant's evidence had been received it would

have shown, or tended to show, that when he discovered the state of things underneath the room, and endeavored to remedy it by cleaning out the sewer, the landlord not only made no change in its construction, but continued to maintain it in a disagreeable, and possibly dangerous, certainly offensive, condition, by suffering the contents of her hotel sewer to flow into and refill the open sewer as often as the tenant would clean it. The neglect of the landlord would seem to be monstrous, and to amount to the creation and continuance of a nuisance upon the adjacent premises. Certainly, it would be for the jury to say whether the evidence made out such a state of facts as exhibited the landlord in the attitude of continuing in the performance of acts which amounted to the maintenance of a nuisance, and through which her tenant's premises were rendered unfit for reasonable use and occupation. The tenant's covenants in the lease obligated him with respect to the maintenance of his own premises in good repair and in a cleanly condition, but the nuisance from the stench arose upon the landlord's property, and because of her repeated neglect. The tenant's covenants did not bear upon such a condition of things, and went no further than to oblige him to do what lay in his power towards keeping his premises in good repair and in a cleanly state. The verdict would turn upon the question whether the defendant had neglected anything which he was able and might reasonably be required to do under his lease, and, if he was not at fault, whether the premises, through the wrongful acts of the landlord, were rendered unfit for occupation, in consequence of which the tenant was justified in abandoning, and did in fact abandon, their possession. It was not necessary that the defendant should have been induced to enter into the lease by the misrepresentation or fraud of the plaintiff. If he was able to

show that during his occupancy his landlord was guilty of affirmative acts, which caused a nuisance, of a nature dangerous to life or health, and against which the tenant was remediless by the performance of any acts called for by his own covenants, the evidence should have been received."

The question presented in this case is whether or not the evidence is sufficient to support the verdict rendered, which has the approval of the trial judge who denied a motion for a directed verdict, as well as a motion for a new trial. The rule is too familiar to the profession in this State to require discussion or citation of cases to support it, of "where there is sufficient evidence to sustain the verdict and abuse of judicial discretion does not appear in the record the verdict will not be disturbed." (Carleton v. King, 51 Fla. 158; 40 So. 191.) When the jury, as reasonable men, may have found a verdict after careful consideration of the evidence, the verdict will not be disturbed on appeal. (Pensacola Electric Company v. Bissett, 59 Fla. 360; 52 So. 367. Consolidated Naval Stores Company v. McNeill, 60 Fla. 38; 53 So. 843. Cohen v. Harris, 61 Fla. 137, 54 So. 905.)

Applying that rule to the evidence in this case; as to whether grounds exist for disturbing a verdict; however unsatisfactory the evidence on the issue involved may appear to the reader of the record of it, the fact must not be ignored that the jury had the witnesses before it and it was its province to determine which witness or set of witnesses more nearly spoke the truth. Where the evidence on essential points involved in the issue being tried is complicated and it does not clearly appear that the verdict is so manifestly against the weight of the evidence as to convince the appellate court that the verdict is wrong or unjust or that the jury was influenced by considerations outside the evidence, the Supreme Court will not reverse the

judgment solely on the evidence; no harmful error of practice or procedure otherwise appearing. Standard Oil Company v. Nickerson, 138 So. 55, and, even if the evidence were of such nature that this Court would find a different verdict if it were trying the case here *"de novo,"* that fact alone would not warrant us in setting aside the verdict which has been rendered by a jury, as predicated upon substantial, competent and legal evidence, approved by the trial judge who saw and heard the witnesses testify and who has refused to disturb it himself by granting a new trial.

This Court is committed by a long line of these decisions to the doctrine that the power of the Supreme Court to reverse a judgment solely upon the evidence ought to be exercised cautiously and with discrimination and only after careful consideration of the evidence and in its most favorable aspect to the party in whose favor the verdict was rendered. (Parrish v. Clark, *et ux.,* 145 So. 848.)

The many assignments of error based upon the admission of evidence or rejection of evidence or the charges given or those given and refused are unnecessary to be discussed because, upon examination of the entire record, it does not appear that under the nature of the issues as made by the parties there was any miscarriage of justice. (See 4499 C. G. L. 1927.)

Plaintiff in error's industrious and resourceful attorney, who has filed an elaborate brief in this case, would have us believe that there are complicated matters involved, but we are not persuaded. The case appears to be very simple, depending for its issue on simply a disputed question of fact. So it is that the case should be affirmed and it is so ordered.

Affirmed.

248

DAVIS, C. J., and WHITFIELD, TERRELL, BROWN and BU-FORD, J. J., concur.

## ON REHEARING.

PER CURIAM.—This case was heretofore decided by an opinion filed herein on June 28, 1933, whereby the judgment appealed from was affirmed. Subsequently a rehearing was granted and oral argument was had on the merits of the case without regard to the previous opinion filed herein.

A complete re-examination and reconsideration of the case on its merits has convinced the Court that the judgment was properly affirmed on the authority of what was said in the opinion heretofore adopted. In consideration of that conclusion, the Court now determines that the judgment shall again be affirmed on rehearing and it is ordered accordingly.

Reaffirmed on rehearing.

DAVIS, C. J., WHITFIELD, ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.