MATHEWS, Justice.
This case involves a dispute between the owner of a piece of land upon which a home was built, the contractor who constructed the home, and' the bank which claimed a lien superior in dignity to that of the contractor.
At the time First Federal Savings and Loan Association of Tampa loaned money on this property and took a mortgage as security for the same, Section 84.03(1) F.S., F.S.A., was in full force and effect. This section reads as follows:
“All liens provided by this chapter shall relate to and take effect from the time of the visible commencement of operations except that, where demolition is involved in the work of im *683 proving, liens other than for demolition shall relate to and take effect from the visible commencement of operations excluding demolition and delivery of materials for such demolition.”
A Mr. Dalton, Executive Vice-President of the First Federal Savings & Loan Association of Tampa, testified that before the loan was made, he personally inspected the property and that he advised Mr. Reading, the appellant, that they would malee the loan. On cross examination of Mr. Dalton it was developed, that at the time of his inspection of the property the construction was thirty to forty percent completed.
Mr. Dalton and the Loan Association knew, or were chargeable with notice, of Section 84.03(1) F.S., F.S.A., which provides that liens shall relate to and take effect from the visible commencement of operations. It is contended, however, that the Loan Association has a lien prior to that of the contractor because of the doctrine of equitable estoppel.
Mr. Dalton testified that -he did not know Mr. Blakeman and was never acquainted with him. He did know Reading, the contractor, and it was through Mr. Reading that he came in contact with Blakeman. Mr. Reading informed Dalton that he was building a house for Blakeman, that it had gotten to a certain point and Blakeman needed money to furnish it. No request of any kind was made to subrogate the lien of Reading through the mortgage of the Loan Association. From these undisputed facts, the Loan Association claims that its mortgage is superior to that of the contractor.
It is quite true, as contended by the Loan Association, that a mechanic’s lien may be precluded by waiver or estoppel from priority over a mortgage. In the case of Hogue v. D. N. Morrison Const. Co., 115 Fla. 293, 156 So. 377, 381, 95 A.L.R. 357, a general contractor was instrumental in helping a hotel corporation secure a loan. It received a large portion of the proceeds of the loan in payment of .labor and materials. The Court' held that the contractor was not estopped to assert that its mechanic’s lien "was superior to the lien of the mortgage when priority of liens was not discussed when the general contractor participated in the negotiations and the contractor did not receive the lender to his prejudice. In that case, like the case at bar, the record was clear that the contractor participated in the negotiations between the hotel and the loaning, company for the purpose of securing a loan. Every one knew that the -contractor would receive -a large portion of the money loaned to pay his bills for labor and materials. This Court said:
"If it had been D, N. Morrison’s duty to advise Meyer Kiser Company of his lien and he had remained silent and that -silence had induced them to make the loan, then the doctrine of estoppel would bar him from claiming a first lien. This, however, was not the case. The matter of the priority of liens was not discussed and Morrison’s lien was fixed -by statute of which Meyer Kiser Company was on notice. The fact that Morrison helped secure the loan in no way affected the status of his lien, and it is not alleged that he purposely deceived the lender. But it is contended that he did not speak when he should have and correct a false impression that the lender had. Morrison was not responsible for this and he had no ground to assume that the lender was not advised of the law of the case.
“The evidence on this point is in hopeless conflict, but it fails to show that Morrison by word or deed deceived or misled the lender or that it altered its position by anything he said or did. There is direct and positive evidence that Morrison was requested to subordinate his lien to that oif the Meyer Kiser Company and he declined positively to do so. On the record the chancellor declined to subordinate the lien of D. N. Morrison Construction Company to that of Meyer Kiser Company, and his decision is not only supported by substantial evidence, it is supported by reason and logic. In this state of the record, we 'must decline to disturb it.”
*684 That part of the decree finding and holding that the mortgage held by the'First Federal Savings & Loan Association of Tampa was a first mortgage lien and superior in dignity to that of /the contractor is error.
, It is next contended that the Chancellor committed error in refusing to reopen the case for the taking of further testimony. A motion to reopen the case was filed approximately seven weeks after the trial and approximately five weeks after a final hearing and the Court had announced its findings and decree, which findings and decree had not been reduced to writing. It appears that the motion was for the purpose of introducing further testimony on behalf of the contractor as to extras. He had full opportunity to offer or introduce such testimony during- the course of the trial. The record shows that he did offer some testimony with reference to extras and they were allowed. . When he had an opportunity and failed to offer all of his testimony, such failure was his responsibility, and he must take the consequences. This question was addressed to the sound discretion of the Chancellor and we do not find from the record that he abused his discretion.
The appellee, Blakeman, contended that he had a contract or agreement with the contractor to be paid two dollars per hour for his labor as a carpenter on the building. The contractor, Reading, denied any such agreement or contract. The testimony ori this question, although weak, was conflicting. There was evidence by Blake-man, if believed by the Chancellor, to authorize a finding- that Blakeman had such an agreement and coiitract with the contractor. The Chancellor heard the testimony, saw the witnesses and observed their demeanor on the witness stand. We will not disturb the-findings of fact of the Chancellor on this question. 308 E. 79th Street Corporation v. Favorite, 111 Fla. 234, 149 So. 625; Exchange Nat. Bank of Winter Haven v. Smith, 148 Fla. 473, 4 So.2d 675; Buckland v. Lewis State Bank, Fla., 39 So. 2d 919.
Reversed in part and affirmed in part with directions to set aside the final decree and enter a new decree in conformity with this opinion.
ROBERTS, C. J., and TERRELL and SEBRING, JJ., concur.